ERNEST S. WILSON, JR., WARREN S. P. COMBS, JR., and TYSON F. SARTIN, constituting the Board of Adjustment of New Castle County, Respondents Below, and COOCH'S BRIDGE AND CHESTNUT HILL CIVIC ASSOCIATIONS, Intervenors Below and Appellants, v. PENCADER CORPORATION, a corporation of the State of Delaware, Petitioner Below and Appellee.

(*January* 17, 1964.)

TERRY, Chief Justice, CAREY, Justice and SEITZ, Chancellor, sitting.

*John VanBrunt, Jr.*, and *E. D. Griffenberg, Jr.* (of Killoran and VanBrunt) for Intervenors Below and Appellants.

*E. N. Carpenter, II*, and *W. E. Wiggins* (of Richards, Layton and Finger) for Petitioner Below and Appellee.

*Januar D. Bove, Jr.* (of Connolly, Bove and Lodge) for the City of Newark, Amicus Curiae.

Supreme Court of the State of Delaware, No. 36, 1963.

SEITZ, Chancellor.

This is an appeal from a zoning decision of the Superior Court.

Peñcader Corporation ("Pencader"), petitioner below, appellee here, requested the New Castle County building inspector to approve, in conjunction with commercial quarrying, the operation of a rock crusher on land located in Pencader Hundred which was zoned R-2. The request was denied and Pencader appealed this ruling to the Board of Adjustment pursuant to 9 *Del. C.* § 2617(1) and Article XVIII, Section 3 of the Zoning Code. The Board of Adjustment sustained the determination of the building inspector. Pencader then petitioned the Superior Court for certiorari pursuant to 9 *Del. C.* § 2618. After briefing and argument the Superior Court reversed the decision of the Board of Adjustment and held that a rock crusher could be operated in an R-2 area either as a principal use or as an accessory use. The intervenors below, appellants here, consisting of the Cooch's Bridge and Chestnut Hill Civic Associations, have appealed from this order, and this is the decision thereon. The City of Newark was permitted to appear as Amicus Curiae in support of the appellants' position. These entities will be referred to herein collectively as "objectors".

Pencader owns approximately 123 acres of land in Pencader Hundred. The entire tract is zoned R-2 which, under Article IV, Section 2 of the Zoning Code, is designated as "agricultural and general purpose" with the

caveat that the purpose for which the large undeveloped areas therein may ultimately be used cannot presently be ascertained and thus they may be rezoned. Within a radius of one-half mile of the tract there are approximately 100 residents and nine farms.

Pencader has leased the tract to a tenant who intends to remove rock from the premises. It is tacitly conceded that this is not a permissible use under Article IV, Section 2, standing alone. However, it is conceded that excavation, i.e., mere removal, is a permissible use of Pencader's property under "General Provisions", Article XVII, Section 6 which reads as follows:

"Section 6. EXCAVATION OF CLAY, SAND, GRAVEL, OR ROCK—The excavation of clay, sand, gravel, rock, or other natural mineral deposit for use on the *premises,* for grading of such *premises,* or for the construction of buildings shall be permitted in any district; materials thus excavated and not used on the *premises* may be sold.

"The excavation of these materials for commercial purposes shall be permitted in an R-2, M-2, or M-3 District, but only after submission to and approval by the Regional Planning Commission of a site plan showing the proposed area of operations, the minimum distance between any quarrying operation and existing street and lot lines, the proposed manner of operations including the routing of traffic to and from the site, and the proposed restoration or improvement of the site or any part thereof at the conclusion of quarrying operations. In any case approval is subject to compliance with the following regulations:

"(1) The final slope of material in any excavation or pit shall not exceed the normal limiting angle of re-

pose of such material.

"(2) Both the top and base of such slope shall not be nearer than fifty (50) feet to any *street line* or lot line."

The parties disagree as to whether the quoted Article permits the operation of a rock crusher on the Pencader tract either as a part of the permitted use or as accessory thereto. At the hearing held before the Board of Adjustment testimony was taken and affidavits filed. The Board found that the operation of a rock crusher was not permissible either as part of the principal use or as an accessory use. It also erroneously understood that a five horsepower limitation found in the Code had application to this particular petition. All parties agree that this finding was not proper, but the objectors contend that the Board's conclusion was sound despite this one erroneous conclusion.

The Superior Court noted that the Board found that a quarry operation of the type contemplated normally includes a rock crushing plant. The Court stripped away the erroneous five horsepower limitation imposed by the Board and then stated that it was clear that a rock crushing plant was a proper use under Article XVII, Section 6. This finding was based on the language of that Article which speaks of "excavation of these materials for commercial purposes" and further includes the term "quarrying operation".

The objectors challenge the correctness of this conclusion. They argue that the right to excavate materials in an R-2 district does not carry with it the right to operate rock crushing equipment.

It will be noted, as the objectors state, that the section of the Code involved refers to excavation of certain materials in certain districts. While "excavation" is not

listed in the definitions found in Article II, it is provided that "Words not defined above shall have the meaning given in Webster's Unabridged Dictionary". In that dictionary the word ""excavation" is defined as follows:

"excavation—1. Act or process of excavating.

"2. A cavity formed by cutting, digging or scooping.

"3a. An uncovered cutting in the earth, in distinction from a covered cutting or tunnel.

"b. The material dug out in making a channel or cavity.

"4. The removal of superposed material, such as earth, stone, or buildings, from the remains, structures, etc. of an age earlier than the present."

We think it reasonably clear under the quoted definition that the word "excavation" does not fairly embrace the process by various stages of crushing stone after it is taken from the earth. We think the use of the term for "commercial purposes" in the context was not intended to enlarge the meaning ordinarily given the word "excavation". We similarly think the reference to the "quarrying operation" is no more than a convenient identification of the excavation process for commercial purposes.

In view of the language of the Code, the subject matter, and the possibility of abuse which can flow from an unfettered right (apart from regional planning approval) to crush stone in an R-2 district, we conclude that those adopting the Code did not intend Article XVII, Section 6 of the New Castle County Zoning Code to permit the operation of a rock crusher as part of the permitted uses recognized by that Article, particularly a crusher of the magnitude presumably visualized.

We turn next to the alternative conclusion of the Su-

perior Court that in any event the operation of a rock crusher in R-2 districts in conjunction with quarrying is a recognized accessory use.

It is clear from the record made below that the operation of rock crushing machinery at excavation sites is a well-accepted aspect of such a commercial operation, at least in non-ornamental rock quarrying. But objectors say, and the Board of Adjustment agreed, that Article XVII, Section 6 does not permit accessory uses in connection with the uses permitted by that Article. The Superior Court disagreed with that construction of the Code. It held that Article IV, Section 2, when read in conjunction with Article XVII, Section 6, permitted the operation of a rock crusher as an accessory use.

Objectors point out that at the end of the list of permitted uses in R and C zoning districts there are explicit provisions for accessory uses. There is no such provision in Article XVII. From this the objectors say it must be concluded that such uses were not intended to be allowed with respect to Article XVII. On the other hand, Pencader contends that Article XVII properly construed is incorporated into Article IV and renders applicable the accessory use provision of that Article.

If the objectors' construction were to be adopted, it would mean that there could be no accessory use to a quarrying operation in any of the three districts where it is permitted. The only way such a use could be justified would be on the basis that it was a permitted use under the provisions applicable to the particular district involved. It would appear that the operation of a rock crusher would be a permitted use in the M-2 and M-3 districts and thus no question of justifying it as an accessory use in those districts could arise. However, the same is not true of an R-2 district. The use of a rock crusher

there can only be justified, if at all, as an accessory use.

Did the drafters of the Code intend that there were to be no accessory uses as such to the principal uses permitted by Article XVII? The answer to this question is not free from doubt. It may best be found by considering the implications of the two possible constructions. If no accessory uses were intended in connection with Article XVII, this would apply to the quarrying of all the materials identified in the Article and not merely to rock. Also, there is often a difficult problem in determining whether a particular use is or is not accessory, and where the use may have offensive overtones, it would seem preferable to resolve the doubt in favor of categorizing it as an accessory use rather than a principal use. In this way, the use can be controlled because, under the Code, "All accessory uses shall be only such as do not alter the character of the premises on which they are located or impair the neighborhood" (Article XVII, Section 3). To say that no accessory use was intended is, fairly or not, to encourage a perhaps undesirable enlargement in practice of the definition of principal uses, at least in the area of present concern.

In view of the factors discussed we conclude that when the drafters of the Code recited in Article XVII that rock could be excavated for commercial purposes in an R-2 district, they incorporated that use into the R-2 permitted uses and intended to make applicable thereto the provision therein which authorized "accessory uses customarily incident to the above uses * * *". It therefore follows that accessory uses are permitted in connection with the excavation of rock for commercial purposes in an R-2 district.

The next issue posed by the parties is whether the rock crusher operation here contemplated is in fact an

accessory use. For this purpose we deem the definition thereof found in the Code controlling. It provides:

"*Accessory Use:* A use customarily incidental and subordinate to the principal use or building and located on the same *lot* with such principal use or building."

The quoted definition is in accord with the general view on this subject. See Application of Emmett S. Hickman Co., 10 Terry 13, 49 Del. 13, 108 A.2d 667. The operation will be on the same lot. The question is whether the operation of a rock crusher is customarily incidental and subordinate to the excavation operation. Clearly the Board of Adjustment did not resolve this issue because of its holding, which both the Superior Court and this Court reject, that the Code did not permit an accessory use to an excavation operation in an R-2 district. On the other hand, the Superior Court concluded, on the basis of what it considered the findings of fact of the Board, that the operation of a rock crusher would be a permitted accessory use.

 In view of the subject matter and the system provided in the zoning laws for their administration we believe that findings on matters such as this should ordinarily originate with the Board of Adjustment. Were this the only matter unresolved we might be inclined to analyze whether the Superior Court's conclusion was justified as being no more than a legal evaluation of undisputed facts. However, since this case must go back to the Board of Adjustment for a reason hereinafter discussed, we think the Board should at the same time hear and determine whether the proposed operation of a rock crusher is an accessory use based on the application of the definition of accessory uses to the facts. In this connection we note that there is an absence of any description in the present record of the rock crusher and its operation as

visualized by Pencader.

 The case must be remanded by the Superior Court to the Board of Adjustment in any event because, assuming the operation of the rock crusher is an accessory use under the definition of that term, neither the Board nor the Superior Court made a determination, as required by the Accessory Use section (Article XVII, Section 3, as to whether the accessory use would alter the character of the premises or impair the neighborhood. This must be done by the Board' unless it is concluded that the operation of the rock crusher is not an accessory use within the definition of such use in the Code. Indeed, we think, in any event, that evidence should be taken and findings made by the Board on both aspects of this matter. The record will then be complete in the event the matter is to be pursued further.

The judgment of the Superior Court and the order of the Board of Adjustment must be reversed. The cause will be remanded to the Superior Court, with instructions to vacate its judgment and remand the case to the Board of Adjustment for further proceedings in conformity with this opinion.