Emil MELLOW, Jeffrey Lott and
James Taylor, Appellants,

v.

BOARD OF ADJUSTMENT OF NEW
CASTLE COUNTY, Edward M. Rush,
William E. Matthews, Sharon Rolle,
William McKinley, George Staats, and
John D. Lake, Appellees.

Superior Court of Delaware,
New Castle County.

Submitted: May 27, 1986.
Decided: Aug. 8, 1988.

Perry F. Goldlust, of Greenville, for appellee John D. Lake.

Jeoffrey L. Burtch, of Cooch and Taylor, and Olha N.M. Rybakoff, of Connolly, Bove, Lodge & Hutz, Wilmington, for appellants.

Richard A. Hauge, of New Castle County Law Dept., Wilmington, for Appellate Bd. of Adjustment, et al.

## OPINION

GEBELEIN, Judge.

This case basically involves a dispute over whether the New Castle County Board of Adjustment properly held that an automobile repair and restoration business at 15 Lower Snuff Mill Road in Yorklyn was and is a legal nonconforming use in continuous existence since 1954. The property was zoned as R–4, residential, when the County adopted the comprehensive zoning code in 1954.

The case is before the Court upon Appellants' motion for reargument of this Court's March 7, 1986 opinion with respect to three issues. They involve: 1) the Superior Court's authority to remand decisions of the Board of Adjustment pursuant to 9 *Del.C.* § 1353(f); 2) the scope of the Superior Court's right to require or hear additional evidence upon appeal from the Board pursuant to 9 *Del.C.* § 1353(e); and 3) the evidence necessary to establish a prior nonconforming use of real property. The opinion was withdrawn when this motion was granted.

The facts of the case are summarized as follows. The Board of Adjustment of New Castle County ("Board") determined that John D. Lake's use of property on Lower Snuff Mill Road for a motor vehicle restoration business was a legal nonconforming use. It found that the business existed when the zoning code of 1954 was adopted, and that it has continued in existence through the present. Thus, it concluded, the use was valid under 9 *Del.C.* § 2610(a) [1]

---

1. "The lawful use of a building or structure, or the lawful use of any land, as existing and lawful at the time of the enactment of a zoning regulation, or in the case of a change of regulations, then at the time of such change, may, except as hereinafter provided, be continued although such use does not conform with the provisions of such regulations or change, and such use may be extended throughout the same building, provided no structural alteration of such building is proposed or made for the purpose of such extension. The county government in any zoning regulations may permit the restoration, reconstruction, extension or substitution of nonconforming uses upon such terms and conditions as may be set forth in the zoning regulations." 9 *Del.C.* § 2610(a).

and New Castle County Zoning Code Sections 23–20.[2]

The Board denied a special exception to allow for an expansion of the nonconforming use. The application was denied because Lake failed to provide appropriate documentation to meet Section 23–20 of the *New Castle County Code, supra* at note 2. The Board also noted Lake's failure to provide the information required in Section 23–85 of the Code, specifically that: 1) the proposed use of the parcel was reasonably necessary for the convenience and welfare of the public and that 2) the proposed use would not be detrimental or injurious to the neighborhood or county. The Board in denying the application pointed to the belief of area residents that the operation of an auto body shop would have an adverse effect on the residential character of the neighborhood. It suggested that the applicant try to locate a properly zoned site within the county for his shop.

Emil Mellow, Jeffrey Lott and James Taylor (appellants), all residents of Yorklyn, appealed the Board's decision that the auto repair shop was a valid nonconforming use, asserting error on several grounds. First, they alleged that since the

Lake's business was not licensed when the Zoning Code was enacted in 1954, that it did not qualify as a nonconforming use. Second, they argued that the casual or occasional use of property in 1954 as a car repair facility did not create a valid nonconforming use. Third, they asserted that even if the business constituted a legal nonconforming use in 1954, the use was discontinued for one year and thus constituted a termination that could not be re-established under the zoning regulation. Appellants also contended that the present use differs in quality and character from the original nonconforming use and thus is prohibited. Finally, Appellants' alleged that the Board's decision was unsupported by substantial evidence.

This Court on March 7, 1986 reversed the Board's decision and remanded the matter for further consideration, ruling that the Board lacked substantial evidence to support its finding of continuous nonconforming use. On April 3, 1986, this Court granted certification of an interlocutory appeal from the March 7th opinion regarding the question of whether this Court had jurisdiction to remand the case to the Board. As a result, the opinions dated

**2.** "Any building or part of a building or any land which at the time of the adoption of this Code or an amendment thereto is being put to a nonconforming use may continue to be used for the same nonconforming purpose. Any change of title or of right to possession shall not affect such continuation of an existing use.

In any disputed case, the nonconforming use status of any building or part of a building or any land shall be determined by the board of adjustment, after public hearing, according to the provisions of Section 23–85.

A nonconforming use may be changed to a more restricted use and when so changed it shall not again be changed to a less restricted use.

No building devoted to a nonconforming use shall during its life be structurally altered to an extent involving a cost greater than its assessed value, nor shall such building be enlarged, unless the use therein is changed to a conforming use.

Whenever a nonconforming use has been discontinued for a period of one year such use shall not thereafter be reestablished, and any future use shall be with the provisions of this chapter; except, that when such discontinuance is on account of any cause beyond the control of the owner or tenant, the period of abandon-

ment shall for the purpose of this chapter date from the termination of such cause ...

A nonconforming use of a building or a nonconforming use of a nonconforming building may be extended either on the same lot or a contiguous lot under the same ownership at the time of enactment of this if approved as a special exception by the board of adjustment, as provided in Section 23–85, subject to the following special requirements:

(1) The extension is for a use which is necessarily incident to the existing use.

(2) Such extension shall not encroach on any of the setback or yard requirements for the district in which the use is located.

(3) The estimated cost of any extension involved does not exceed fifty percent of the replacement value, as appraised by the county board of assessment, of the existing building to which it is incident.

(4) Such extension shall have a floor area not to exceed twenty-five percent of the floor area of the existing buildings to which it is incident.

(5) It will not impair the value of the adjoining property or adversely affect the character of the neighborhood.

(6) Provided only one extension shall be permitted by the board of adjustment during the life of the nonconforming use." § 23–20.

March 7 and April 3, 1986, were withdrawn. The motion for reargument was granted as to both opinions on April 7, 1986.

The Appellee Board took no independent position in the appeal, as it asserted no direct interest in the outcome. However, the county did submit a memorandum following this Court's granting of the motion for reargument.

## I. *Propriety of Remand*

Appellants in their motion for reargument assert that the Court is without authority to remand the case to the Board of Adjustment. This position is supported by the county and Appellee Lake.

The applicable statute provides that the Court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review." 9 *Del.C.* § 1353(f). The Court may also hear additional evidence upon an appeal from the Board. 9 *Del.C.* § 1353(e). This section basically is a codification of the common law practice allowing a court to receive evidence in an action to review error under a writ. *See* I *Woolley, Practice in Civil Actions in the Law Courts of the State of Delaware*, § 897 (1906), citing *Cullen v. Lowery*, Del.Super., 2 Harr. 292, n. 2 (1837), citing *Bailey v. Luff*, Del.Supr., unreported (1826). *See also* the *Appellate Handbook Committee, Del.Supr.Ct.Rules Advisory Committee, Delaware Appellate Handbook*, p. 25–17 (1984).

The Delaware Supreme Court specifically has interpreted the statute to mean that the Superior Court cannot remand a case to the Board, upon appeal, for the purpose of making specific factual findings, or for conducting further hearing or evidence taking. *See Auditorium, Inc. v. Board of Adjustment*, Del.Supr., 91 A.2d 528 at 532 (1952). *See also Searles v. Darling*, Del.Supr., 83 A.2d 96, 99–100 (1951) (statute does not give the Superior Court authority to remand the matter to the Board where the record fails to include a fact essential to the Board's decision).

More recent cases have, in a fashion, followed these early holdings by reversing,

rather than remanding, Board decisions unsupported by substantial evidence on the record. *See, e.g., Cooch's Bridge Civic Ass'n v. Pencader Corp.*, Del.Supr., 254 A.2d 608 at 610 (1969); *Beattie v. Babcock*, Del.Super., 180 A.2d 741, 744–745 (1962); *Janaman v. New Castle County Board of Adjustment*, Del.Super., 364 A.2d 1241 at 1242 (1976); *Gamble v. Board of Adjustment*, Del.Super., C.A. No. 86–MY–12, 1987 WL 8691, Martin, J. (February 5, 1987).

Although caselaw specifically states that the Court cannot remand on appeal, and most cases impliedly have followed that rule, a different practice also has developed. Cases are, in fact, often remanded by the Superior Court for the purpose of specific fact findings by the Board. *See, e.g., Delaware Appellate Handbook, supra*, p. 25–17. *See also Kwick–Check Realty Co. v. Board of Adjustment*, Del.Ch., 369 A.2d 694 at 699 (1977) (applications for area variances were remanded to the Board due to the Board's failure to provide particularized findings of fact and conclusions of law supporting its denial of the applications). *See also Trivett v. New Castle County Board of Adjustment*, Del.Super., C.A. No. 84–FE–17, Bifferato, J. (April 16, 1985).

In fact, the Delaware Supreme Court has directed the Superior Court to remand cases to the Board for further proceedings. In *Wilson v. Pencader Corp.*, Del.Supr., 199 A.2d 326 at 330 (1964), the lower Court was instructed to remand the case to the Board of Adjustment since neither the lower Court, or the Board, made *any* determination on a key issue. The Supreme Court did not address the issue of the propriety of remand; rather, remand was the result of the decision. Likewise, in *Application of Emmett S. Hickman Co.*, Del.Supr., 108 A.2d 667 (1954), the Delaware Supreme Court instructed the Superior Court to remand the case to the Board, but the *issue* of the availability of remand as an alternative for the Court under the statute was not addressed.

Despite the *use* of remand in *Wilson, Hickman*, the Delaware Supreme Court in its only decisions dealing with the

*issue* of remand clearly ruled that the applicable statute does not give the Superior Court authority to remand the matter to the Board. Because this Court is now asked to determine whether remand is appropriate in the instant case, the greater weight will be given to the higher Court's express ruling on the issue.

In addition to the foregoing, *Wilson* is distinguishable from *Mellow* in that it involved a complete *absence* of findings, conclusory or otherwise, on a key issue. The Supreme Court in *Hickman* instructed the parties to supplement the record after it construed statutory language. In the instant case, the Board considered the key issues; the support for the Board's findings as to those issues is in question.

Several post-enactment (1965) events probably prompted the wider use of remand as an alternative to reversal or the taking of new evidence. These include the increasing caseload of this Court and the growing expertise of the Board of Adjustment. However true this might be, the split of caselaw on the propriety of remand returns our focus to the statute itself for further guidance. And the statute, as previously noted, does not specify remand as an alternative.

■ The legislature has provided for remand under other statutes. Clearly, it could have added it to § 1353(f) had that been the legislative intent. *See* 14 *Del.C.* § 1414 (Court may reverse, affirm or modify a decision of the Board of Education, or remand the cause to the Board for a rehearing). It is accepted that Courts may not engraft upon a statute language which clearly has been excluded therefrom by the legislature. *Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232 (1982).

To determine whether 'remand' was deliberately excluded, a determination of legislative intent is imperative. In this instance, in addition to the absence of 'remand' in the statutory language, it appears that the legislature intended to basically codify the common law. Subsection (a) refers to the review procedure as one to correct an illegal decision, and subsection (b) provides that the Court will issue a writ of certiorari to review the Board's decision. Review by certiorari traditionally has been limited to errors which appear on the face of the record. *Mason v. Board of Pension Trustees,* Del.Super., 468 A.2d 298, aff'd Del.Supr., 473 A.2d 1258 (1983). In a rare case, where it is necessary to complete or explain an otherwise incomplete or doubtful record, the reviewing court would consider evidence outside of the record. *Woolley,* § 898 at p. 626. Subsection (e) appears to codify this common law provision. The common law writ did not allow for remand. Read in conjunction with the exact wording of the statute, the common law practice adds strength to appellants' position.

■ Finally, the statute specifies the Court's alternatives on appeal in an unambiguous manner, leaving no doubt as to the meaning of the words used. The Court's role therefore is limited to an application of the literal meaning of the words. *Coastal Barge Corp. v. Coastal Zone Indus. Control Board,* Del.Supr., 492 A.2d 1242 (1985). *See also* 2A *Sutherland, Statutory Construction* at § 55.03, p. 603 (1984) (statute will not be extended to include situations by implication when its language is specific and not subject to reasonable doubt). Also, when a statute provides particular remedies, the courts should not expand the coverage to include other remedies. *Id.*

■ Based on the foregoing, it is apparent that the legislature enacted § 1353 to insure that judicial review of Board decisions is very limited, to leave primary decision-making power to the body with the recognized expertise in the area—the Board. The general policy of the legislature evidently is to limit the scope of review and the review procedure itself, so that applications for variances, special exceptions and the like can be decided with some degree of rapidity and finality, in order to avoid economic or other hardship on parties to the litigation.

This Court therefore concludes that remand for further proceedings is not an available remedy for the Court.

## II. *Additional Evidence*

The next issue is whether this Court may hear additional evidence upon appeal from the Board. 9 *Del.C.* § 1353(e) provides:

"If upon the hearing, it shall appear to the Court that testimony is necessary for proper disposition of the matter, it may take evidence, or appoint a referee to take such evidence as it may direct, and report the same to the Court together with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the Court shall be made."

The county asserts that the provision, when read in conjunction with § 1353(f), appears to establish an intent by the legislature to conclusively resolve Board matters before the Superior Court, subject only to the right of appeal to the Supreme Court. The county reasons, therefore, that the Court should hear further evidence only if some procedural flaw prevented the applicant from producing necessary evidence; otherwise, the Court simply should reverse the Board if it fails to support its findings with substantial evidence.

Appellants state that the issue is moot because Appellee has indicated that no further evidence is available. Lake's attorney did in fact state that his client had no more information or records, and that if he did, he would have produced them (TR 130). However, Jonathan Lake testified that he had access to tax forms (TR 80–83) and his State Farm insurance policy (TR 85). These items were not produced at the hearing. Nonetheless, they become important only if this Court determines that the Board's decision is unsupported by substantial evidence and if it rejects the county's interpretation of the clause.

The statutory language literally and clearly allows the Superior Court to hear evidence in its own right. This is supported by *Searles*, 83 A.2d at 99 (if record does not support conclusions with substantial evidence, the Court can take evidence in its own right); *Auditorium, Inc. v. Board of Adjustment of Mayor & Council of Wilmington*, Del.Supr., 91 A.2d 528 (1952) (Court had no authority to remand proceedings to the Board, even with a record devoid of facts upon which Board's conclusions were made, and Court hence was required to take testimony to ascertain such facts); and *In re Ceresini*, Del.Super., 189 A. 443 (1937) (Court properly heard evidence of facts as to property involved and its surroundings). *Auditorium* and *Searles* both were cases where the Board stated no basis for its conclusions.

Because today's prevalent practice has been for the Court to remand rather than to hear new evidence, there are no modern cases directly on point. However, some guidance is provided by implication. For example, in the more recent case of *Trivett*, plaintiffs argued that there was available evidence, not heard by the Board, bearing on the credibility and bias of witnesses. The Court noted that although the Court could hear evidence not before the Board, the more prudent course was to remand it to the Board since it is the function of the Board, not the Court, to access the credibility of witnesses. Thus the Court's right to hear evidence was acknowledged, even when remand was thought to be a viable alternative.

Looking to the question of under what circumstances new evidence may be taken, the 1951 Delaware Supreme Court case of *Searles v. Darling* provides some illumination. The Court expressly rejected the Maryland Courts' view that the Court must confine the evidence before it to such testimony as the party failed, without fault, to introduce. *Searles*, 83 A.2d 96 at 99. It ruled instead that a proper record sent up by the Board "would be a factor often controlling disposition of the case by the Superior Court, but necessarily would not always constitute the entire basis for the decision." *Id.* If the record shows that substantial evidence supported the decision, the record would control unless there was an abuse of discretion or error of law. *Id.* Because *Searles* involved a case where nothing substantial was sent up by the Board, the Court heard all material evidence the parties had to offer. It appears that, based on the foregoing, a Court may

hear evidence if substantial evidence on the record does not support the Board's finding, without regard to fault. *See also Leager v. New Castle County Board of Adjustment*, C.A. No. 84A–SE–6, O'Hara, J. (June 25, 1985) (Court held that an evidentiary hearing was unnecessary since there was substantial evidence to support the Board's findings, suggesting that a hearing would be available were the record unsupported.)

Because the statute clearly allows this Court to take additional evidence, I cannot agree with Appellants that new evidence may be taken only if a procedural flaw prevented its introduction below. If this were the practice, decisions would not be based upon what is just, but rather upon a technicality; *i.e.*, if the Board failed to include or hear a piece of vital evidence to support its decision, one party would lose due to mistake or inadvertence. The statute clearly allows this Court to hear evidence so that a just decision may be reached, thus providing the finality desired. It is proper for the Court to hear additional evidence, regardless of fault of the parties.

## III. *The Board's Decision*

We next turn to the issue of whether there was substantial evidence to support the Board's determination that the car restoration business at 15 Lower Snuff Mill Road was a valid nonconforming use. If there was, additional evidence is unnecessary.

Evidence in support of the Board's finding is as follows. First, the Board heard testimony on August 14, 1984, producing 132 pages of transcript. Minipe Lake, Jonathan Lake's mother, testified that her husband, and then her son, continually operated the business since 1945 (TR 10–23). John and Carolyn Brooks, Jonathan's brother-in-law and sister, respectively, testified that they lived near or on the property from 1975–1980, and observed the business operating throughout that time (TR 23–36). Carolyn assisted her father in the business prior to 1975 (TR 33–34). A customer, Eugene Wagner, stated that he had his car repaired, on the property, in 1979 (TR 60–61). Mr. Griffith from the New Castle County Commission on Development and Housing, Code Inspection, testified that he inspected the house in 1983 for other reasons, but checked the business portion as far as asking five neighbors to sign a statement that the business had been operational since 1954 (TR 74–80). Those signatures were produced, but Mr. Griffith did not contact the individuals.

A 1979 flood destroyed most of the pertinent records on the business. Jonathan Lake did produce some miscellaneous documents for the period of 1954–1965, and some checks, photographs and purchase receipts for the later years (1966 on) (TR 49). No tax returns or business insurance receipts were introduced, although Lake did state that some were available (TR 85).

More than 10 area residents unrelated to Jonathan Lake signed affidavits to the effect that they were aware of the continuous operation of a body shop at 15 Lower Snuff Mill Road. The residents had lived in the area from 22 to 66 years by 1984. Affidavits also were produced by a service station operator and an auto parts owner who have worked with the Lake's business over 25 years and eight years, respectively, at the time of the hearing (TR 62). None of these individuals testified at the hearing.

Based on the foregoing, the Board issued its opinion that Lake had established a valid nonconforming use. Rationale for the opinion is as follows.

"The Board is convinced that Mr. Lake Senior did not obtain business licenses nor conduct the business in what might be considered a business-like manner, nevertheless he was carrying on an automobile restoration use at his home. The applicant, John Lake, now wishes to continue this use as a business, and has attempted to obtain the proper documentation and establish a proper checking account to run the business in an efficient manner. The Board believes that the weight of the evidence presented in this application is in support of applicant's contention that the use existed prior to zoning and continued unbroken through 1984. The Board, therefore, by a majority vote, finds in favor of applicant's position."

■ The Superior Court's scope of review on appeal from a county Board of Adjustment decision is limited to correction of errors of law and to a determination of whether or not substantial evidence exists in the record to support the Board's findings of fact and conclusions of law. *Janaman v. New Castle County Board of Adjustment,* Del.Super., 364 A.2d 1241 (1976), aff'd 379 A.2d 1118 (1977).[3] Substantial evidence is that evidence from which an agency fairly and reasonably could reach the conclusion it did. *National Cash Register v. Riner,* Del.Supr., 424 A.2d 669, 674–75 (1980). It is more than a scintilla but less than a preponderance. *Olney v. Cooch,* Del.Supr., 425 A.2d 610, 614 (1981). If the decision is supported by substantial evidence, the Court must sustain the decision of the Board, even though it would have decided otherwise had it come before it in the first instance. *Searles,* 83 A.2d 96 at 99; *Kreshtool v. Delmarva Power & Light Co.,* Del.Super., 310 A.2d 649 at 653 (1973). This is because it is for the agency, and not the court, to weigh evidence and resolve conflicting testimony and issues of credibility. *See Mooney v. Benson Mgt. Co.,* Del.Super., 451 A.2d 839 at 841 (1982), rev'd other grounds, Del.Supr., 466 A.2d 1209 (1983); *Fisher v. Pilcher,* Del.Super., 341 A.2d 713 at 716 (1975).

Appellants assert that 1) since the business was unlicensed it was illegal, and thus was not a valid nonconforming use in 1954; 2) that the earlier use was casual and that casual or occasional use of property does not constitute a nonconforming use; 3) that the business terminated for at least one year and thus could not be reestablished; and that 4) current use differs in character and quality from the earlier use.

There is substantial evidence on the record to support the Board's finding that there was a valid, nonconforming car refurbishing business on the property, in continuous operation since 1954, and that the current operation is a normal outgrowth of the earlier one. Thus, this court will not and cannot redecide these factual findings.

■ Specifically, the record revealed substantial evidence to support the Board's finding that the earlier use was not so casual or occasional that it could not constitute a valid, nonconforming use. The Lakes were found to have begun using their property for automobile repair and refurbishing prior to 1954, and to have invested appropriate time and money in the business. The theory behind the nonconforming use provision in the zoning law is that once a landowner has begun to use his property for a particular purpose, a restriction preventing such use would cause substantial hardship. The Lake's business was found by the Board to meet the nonconforming use standard.

Cases holding that a use was so casual or occasional that it did not create a valid nonconforming use were more extreme than the instant case. In *Minquadale Civic Ass'n v. Kline,* Del.Ch., 212 A.2d 811, at 816 (1965), the son of the former owner of a trucking terminal parked a truck on a lot adjacent to the terminal in the year prior to enactment of a zoning ordinance, which classified the area as residential. It was held that since the son parked the truck on the premises only at night when he came home from work, his use did not constitute a nonconforming trucking business. This finding was strengthened by the fact that the adjoining land sought to be included as a nonconforming use was not purchased until *after* enactment of the zoning ordinance. In *Auditorium, Inc.,* Appellant acquired the right to use its premises for sporting events but later used it for the sole purpose of furniture exhibitions. There, the Appellant was not allowed to revert to the original nonconforming use. In *New Castle County v. Harvey,* Del.Ch., 315 A.2d 616 (1974), it was held that the temporary parking of school buses was not a continuation of the nonconforming use of the temporary parking of vehicles inciden-

---

3. A Board decision should be based on findings required by statute, but in the absence of such findings, the appellate court will review the record to determine whether there is evidence upon which the required finding could be based. *Application of Beattie,* Del.Super., 180 A.2d 741 (1962).

tal to the business activities of garage repair and garbage collection.

■ The Court notes that Lake legally can expand and improve his business to meet the demands of normal growth. *Minquadale Civic Ass'n*, 212 A.2d at 815. The Board found this to be the case here. Moreover, the Board did recognize limits on growth by denying Appellee's application for a special exception on the basis that it was inappropriate for the area, and exceeded normal growth.

■ Finally, the Board found that based on available testimony and records, the business was continuous; thus, there being evidence to support that determination, this Court will not redecide the issue of whether the business was interrupted for a year or more.

■ The sole remaining issue is whether appellee's failure to obtain a license for the business made it an unlawful use, unentitled to protection by the nonconforming use ordinance. *See Zoning Code of New Castle County*, Art. I—Definitions (1972) (a nonconforming use is a use of land or use of a building lawfully existing at the time the regulations became effective, which does not conform to the use requirement of the district in which it is located). Some jurisdictions have held that a nonconforming use may not be established where the use was commenced and maintained without a license. *See, e.g.*, 82 Am.Jur.2d *Zoning and Planning* § 185 (1976), *Pushnik v. Hempfield Township*, 43 Pa.Cmwlth. 332, 402 A.2d 318 (1979). Other jurisdictions have held that an exception is made where the law violated does

not have as its purpose one which relates to zoning. For instance, in *Carroll v. Hurst*, 103 Ill.App.3d 984, 59 Ill.Dec. 587, 431 N.E.2d 1344 (1982), the Court held that the right to a nonconforming junkyard can be established by a yard which lacks a permit, the sole purpose of the permit being to prevent theft. Current Delaware law specifies that the applicable licenses are revenue raising measures (not zoning regulations). 30 *Del.C.* § 2301.

Delaware law is scant on the criteria needed to establish a valid nonconforming use. It has been held that: 1) the nonconforming use must be in existence when a contrary zoning ordinance is passed (*see Amico v. New Castle County*, D.Del., 571 F.Supp. 160 at 170 (1983)); and that 2) the business must have been open to the public at the time the new ordinance took effect. *Id.* One case pointed out that until the adoption of a zoning ordinance, there was no such thing as a nonconforming (illegal) use because all uses were conforming.[4] *Dover Products Co., Inc. v. Turner, et. al.*, C.A. 328 K.C., *Twilley et al. v. Dover Products Co., Inc.*, C.A. No. 409 K.C., Del.Ch., Marvel J. (May 24, 1982).

The foregoing dictates the conclusion that a use that is not illegal per se (or one that violates a statute unrelated to land use or zoning) can, in fact, be held to be a valid nonconforming use.

■ The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable. *McQuail v. Shell Oil Co.*, Del.Supr., 183 A.2d 572, 578 (1962); *Mobil Oil Corp. v. Board of Adjustment*,

---

4. Dover Products renovated its boiler room without obtaining any of the required county permits, thus violating the Building Code of Kent County. 9 *Del.C.* Ch. 44. Zoning had not been adopted in Kent County at that time. "Until the adoption of the Interim Zoning Ordinance for Kent County ... there was ... no such thing as a nonconforming use because all uses were conforming, there being, as noted above, no zoning restrictions then in effect. Hence, prior to February 1, 1969, the operation of Dover Products as a rendering plant was legal, and, as of such date, when zoning became effective in Kent County, such business became a nonconforming use pursuant to Section 5.1 of

the Interim Zoning Ordinance of Kent County." *Id.* at p. 2.

The Court concluded that *later* construction of a warehouse and office without required building permits constituted an illegal *extension* of a nonconforming use, and thus had to be discontinued. However, the Court ruled that partial suspension of business should be set aside upon the payment of permit fees due the county, provided that the Board of Adjustment issued a special exception. Recall that the instant case involves no issue of expansion. Rather, like the boiler room built without a permit, the business was in existence without a license before adoption of the zoning code.

**956**

Del.Supr., 283 A.2d 837, 839 (1971). If the Board's decision is fairly debatable, there is no abuse of discretion. 82 Am.Jur.2d § 335. Although Appellants have pointed to conflicting testimony, the issue is debatable. Appellants have not met their burden.

The Board's decision is AFFIRMED.

IT IS SO ORDERED.