IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN D. HARTIGAN, | : | |
|     Appellant, | : | |
| | : | |
|     v. | : | C.A. No.: S17A-08-003 RFS |
| | : | |
| SUSSEX COUNTY BOARD OF | : | |
| ADJUSTMENT, IMMANUEL | : | |
| SHELTER, INC., and FAITH | : | |
| UNITED METHODIST CHURCH, INC., | : | |
|     Appellees. | : | |

| | | |
|---|---|---|
| KENNETH BARTHOLOMEW and | : | |
| JOHN R. ZAWISLAK, | : | |
|     Appellants, | : | |
| | : | |
|     v. | : | C.A. NO.: S17A-09-001 RFS |
| | : | |
| SUSSEX COUNTY BOARD OF | : | |
| ADJUSTMENT, IMMANUEL | : | |
| SHELTER, INC., and FAITH | : | |
| UNITED METHODIST CHURCH, INC., | : | |
|     Appellees. | : | |

## MEMORANDUM OPINION

Date Submitted:  February 22, 2018
Date Decided:  March 28, 2018

*Upon Appeal from the Decision of the Sussex County Board of Adjustment.*
*Reversed.*

John D. Hartigan, 33060 East Light Drive, Lewes, Delaware 19956, *pro se*, Appellant

Timothy G. Willard, Esq., Fuqua, Willard, Stevens & Schab, P.A., 26 The Circle, P.O. Box 250, Georgetown, Delaware 19947, Attorney for Appellants Kenneth Bartholomew and John R. Zawislak

David C. Hutt, Esq. & R. Eric Hacker, Esq., Morris James Wilson Halbrook & Bayard, 107 W. Market Street, Georgetown, Delaware 19947, Attorneys for Appellee Immanuel Shelter

James P. Sharp, Esq., Moore & Rutt, P.A., 122 W. Market Street, P.O. Box 554, Georgetown, Delaware 19947, Attorney for Appellee Faith United Methodist Church, Inc.

**STOKES, J.**

# I.    INTRODUCTION

Presently before the Court are two appeals from a decision of the Sussex County Board of Adjustment ("BOA" or "Board").[1]  The first appeal was brought by John D. Hartigan.  The second was brought by Kenneth Bartholomew and John R. Zawislak (all three men referred to collectively as "Appellants").  Appellants seek to reverse the BOA's decision to grant Immanuel Shelter, Inc. ("Immanuel Shelter") a special use exception to operate a homeless shelter on a site zoned for agricultural residential use (AR-1).  The Court **REVERSES** the decision of the Board for the reasons discussed below.

# II.    FACTS AND PARTIES' CONTENTIONS

Immanuel Shelter is a non-profit organization that offers services to homeless individuals in Sussex County.  Immanuel Shelter now seeks to open a "small transitional living facility to help individuals achieve the stability of permanent housing."[2]  Therefore, it submitted an application for a special use exception in order to operate the homeless shelter at 32490 Lewes-Georgetown Highway in Lewes, Delaware, which is located near the Five Points Intersection.  The property is zoned for agricultural residential use; therefore, in order to operate a homeless shelter on the premises, Immanuel Shelter sought a special use exception.  Faith United Methodist Church is the record owner of the property in question, but Immanuel Shelter, as the contract-purchaser, is the equitable owner.

The BOA held a public hearing on May 15, 2017.  At the hearing, Immanuel Shelter provided general information on homelessness and gave an overview of the project.  Glenn Piper, a certified real estate appraiser with Landmark Associates, testified for Immanuel Shelter.  He stated that the proposed use would not negatively impact property values or use in the surrounding area.

---

[1] The appeals were not consolidated, but have run along parallel filing schedules.  The facts and issues presented in both appeals are identical.  Therefore, the Court addresses both the Hartigan and Bartholomew appeals in this joint decision.

[2] Resp't Immanuel Shelter's Answering Br. 3.

1

Additionally, Janet Idema, President of the Board for Immanuel Shelter, testified that the shelter would utilize a strict vetting process to ensure that only certain individuals be permitted to stay on the premises. At that time, she believed that potential residents could be processed at Delaware State Police Troop 7 to ensure that they had not been convicted of violent felonies and were not Tier Two or Tier Three Sex Offenders. Ms. Idema additionally explained that individuals staying at the shelter would be required to perform chores, seek work, and find stable housing. A person would only be able to stay for a maximum of 90 days. Seven additional individuals spoke in support of the shelter.

Seventeen individuals spoke out against the shelter. A large number of those speaking in opposition were residents of the nearby Henlopen Landing and Lewes Crossing housing developments. John Hartigan is a resident of the Henlopen Landing neighborhood, but he did not speak at the public hearing. Kenneth Bartholomew is also a resident of Henlopen Landing. He spoke in opposition to the shelter at the public hearing. John Zawislak is a resident of the Lewes Crossing neighborhood. He did not testify at the hearing. The residents' main concern was that the presence of homeless individuals would lead to increased panhandling at the entrances of Henlopen Landing and Lewes Crossing, which would deter prospective homebuyers and decrease property values. Residents also expressed concerns for their safety as well as the possibility of increased traffic in the area. In addition to concerns about the impact of increased traffic volume on traffic flow, residents voiced their concern about the safety of people staying at the shelter who may be walking on the congested roadway in order to get to the nearby DART bus stop.

The Board voted by a three to one margin to approve the application. It found that the shelter would not substantially adversely affect uses of nearby properties, thereby meeting the standard for granting a special use exception. The BOA gave the following explanations in support of its finding. According to the Board, property values are unlikely to decrease in response to opening the shelter.

2

Appraiser Glenn Piper testified to such, and members of the opposition did not present expert testimony, reports, or studies from a qualified individual to counter his assertion. Additionally, the BOA relied on Immanuel Shelter's representations about the vetting process for potential residents to find that sufficient safeguards would be in place to ensure the safety of those living in nearby neighborhoods.[3] Moreover, the Board relied on DelDOT's opinion that the traffic impact from the shelter would be negligible to find that the shelter would not have a substantial impact on traffic in the area. As a result, the BOA granted the special use exception.

In response, Appellants appealed the Board's decision to this Court. The appeals raise the same issue: whether the BOA used the proper statutory basis to grant the special use exception and whether, pursuant to the applicable statute, the homeless shelter could be considered a "tourist home."[4] The statutory bases for the Board's action are Sussex County Code § 115-15 and § 115-23. § 115-15 states that "…permitted uses are listed for the various districts. Unless the contrary is clear from the context of the lists or other regulations of this chapter, uses not specifically listed are prohibited."[5] § 115-23 lists the permitted circumstances for a special use exception. One of the permitted exceptions is for a "tourist home."[6] § 115-4B defines a tourist home as "a dwelling having not more than six rental rooms for guests. No cooking facilities shall be permitted in individual guest rooms."[7] The Sussex County Code also includes bed-and-breakfasts, rooming houses, boarding

---

[3] In later submissions to this Court, Immanuel Shelter explained that Troop 7 will not be able to screen potential residents, as represented to the BOA. As an alternative, Immanuel Shelter plans to vet people by fingerprinting through the State Bureau of Identification and internet searches. According to Immanuel Shelter, the material parts of the vetting process will remain unchanged. Yet, pause arises given that there was an innocent, but material, misstatement of the process to the BOA. While Immanuel Shelter plans to have fingerprinting run through the State Bureau of Identification, this process takes considerable time. Consequently, the process will fall short of the representation made to the BOA and ruled upon in its decision. This may directly impact the safety aspect of this case. However, given the Court's ruling, there is no need to consider this issue further.

[4] Sussex Cty. C. § 115-23 was not discussed in the Board's decision. The Board noted that the legality of the special use exception was questioned in paragraph 80 of its decision, but did not delve into the specifics of § 115-23 or the definition of tourist home.

[5] Sussex Cty. C. § 115-15.

[6] Sussex Cty. C. § 115-23.

[7] Sussex Cty. C. § 115-4B.

houses, and lodging houses in the definition of tourist home. Thus, the central question presented by the appeals is whether the shelter is a tourist home.

However, Immanuel Shelter counters by claiming that this argument was waived by Appellants' failure to assert this point before the Board. Additionally, Immanuel Shelter argues that the homeless shelter would fit into the definition of tourist home, and is, therefore, deserving of a special use exception.

### III.    STANDARD OF REVIEW

The standard of review for appeals from a Board of Adjustment decision is limited to the correction of errors of law and a determination of whether substantial evidence exists in the record to support the Board's findings of fact and conclusions of law.[8] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[9] If the Board's decision is supported by substantial evidence, a reviewing court must sustain the Board's decision even if such court would have decided the case differently if it had come before it in the first instance.[10] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable."[11] In its appellate review, the Superior Court after examining the record may "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[12]

### IV.    ANALYSIS

It is well settled law that "a reviewing court cannot consider issues and arguments not raised before an administrative agency."[13] However, contrary to Immanuel Shelter's assertions, the issue of

---

[8] *Janaman v. New Castle County Bd. of Adjustment,* 364 A.2d 1241, 1242 (Del. Super. Ct. 1976).
[9] *Miller v. Bd. of Adjustment of Dewey Beach*, 1994 WL 89022, at *2 (Del. Super. Ct. Feb. 16, 1994).
[10] *Mellow v. Bd. of Adjustment of New Castle County*, 565 A.2d 947, 954 (Del. Super Ct. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).
[11] *Id*. at 556.
[12] 22 Del. C. § 328(c).
[13] *Beiser v. Bd. of Adjustment of Dewey Beach*, 1991 WL 236966, at *4 (Del. Super. Ct. Oct. 25, 1991).

4

the homeless shelter's legality under § 115-23 was presented to the BOA. In comments submitted to the Board prior to the public hearing, both George Ladny and Larry Anzinger raised concerns about the legality of granting a special use exception to a homeless shelter, specifically whether the statutory power existed to take such action.[14] Additionally, paragraph 80 of the Board's decision notes that Mr. Ladny testified at the hearing that he was unsure of the legal authority on which Immanuel Shelter's application was based.[15] Thus, it is clear that the arguments based upon § 115-23 were raised at the administrative level; therefore, the argument is not waived.

Despite the relatively broad interpretation given to the term, the Court finds that it is simply too far of a stretch to say that a homeless shelter is a tourist home. It is clear from the definition listed in § 115-4B and the context of the other categories of tourist home that the Sussex County Code contemplates those types of living arrangements where the resident is paying some form of rent in order to temporarily stay at the premises. In fact, the statutory definition explicitly states that a tourist home should not contain more than six *rental* rooms for guests.[16]

Therefore, the concept of a homeless shelter does not fit into this characterization. The residents of the shelter will not be required to pay rent in order to live at the shelter. This key difference makes it so a homeless shelter is not akin to the other examples of a tourist home given in the Sussex County Code. As a result, the shelter does not fall into one of the permitted categories listed in § 115-23. Section 115-15 clearly states that uses not specifically listed are prohibited. Nor can the use be clearly implied in context from the list of recognized uses.[17] Thus, the homeless shelter must be denied a special use exception at this time.

---

[14] Bartholomew Reply Br. AR1; AR2.
[15] *Id.* AR4.
[16] Sussex Cty. C. § 115-4B (emphasis added).
[17] This is consistent with the idea that standards are required and an administrative board like the BOA does not have carte blanche authority. Kathryn L. Moore, *The Lexington-Fayette Urban County Board of Adjustment: Fifty Years Later*, 100 Ky. L. J. 435, 465 (2012) ("In the years since the Dukeminier-Stapleton study, the Kentucky Court of

As it stands, the only way for a homeless shelter to be established in an AR-1 zone would be via amendment to the permitted uses for a special use exception or, potentially, for the shelter to have a rental component in its operation.[18]

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Board committed legal error in granting a special use exception to Immanuel Shelter for the operation of a homeless shelter. Therefore, the finding of the Board is **REVERSED**.

**IT IS SO ORDERED.**

---

Appeals has repeatedly stated that 'a zoning ordinance must contain standards to be used in determining whether to permit or deny a conditional use, so as not to invest absolute and arbitrary power in the administrative agency.'").

[18] *See Stork v. Talbot Interfaith Shelter, Inc.*, 2016 WL 4978454 (Md. Ct. Spec. App. Sept. 15, 2016) (The Town Council for Easton, Maryland passed an ordinance adding homeless shelters to the list of special use exceptions).