SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

April 11, 2018

Mark F. Dunkle, Esquire
Parkowski, Guerke & Swayze, P.A.
116 West Water Street
P.O. Box 598
Dover, DE 19903

Daniel F. McAllister, Esquire
Baird, Mandalas, Brockstedt, LLC
6 South State Street
Dover, DE 19901

Michael J. Hoffman, Esquire
Tarabicos Grosso, LLP
One Corporate Commons
100 W. Commons Blvd.
New Castle, DE 19720

> **Re:** *Nepa v. The Board of Adjustment of the City of Lewes, et al.,*
> **C.A. No: S17A-06-003 (ESB)**

Dear Counsel:

This is my decision on the appeal filed by Ernest M. and Deborah A. Nepa ("the Nepas") of the denial of their request for three area variances for their historic home in the City of Lewes by the Lewes Board of Adjustment. The Nepas' home encroaches 4.8 feet into their sideyard setback. The Nepas want to make certain additions to their home, which cannot be done without area variances from their sideyard setback and a requirement that their house and garage be at least ten feet apart. So, the Nepas filed an application for the necessary three variances. Area

variances are governed by the Delaware Supreme Court's *Kwik-Check* decision. In *Kwik-Check*, the Supreme Court stated:

> Such practical difficulty is present where the requested dimensional change is minimal and the harm to the applicant if the variance is denied will be greater than the probable effect on the neighboring properties if the variance is granted. Therefore, to determine if the difficulties presented by the owner are practical rather than theoretical, and exceptional rather than routine, the Board should take into consideration the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements in the character of that use of the property which is a permitted use under the use provisions of the ordinance. [citations omitted].[1]

The Delaware Supreme Court, in subsequent decisions, has referred to the exceptional practical difficulty test as a weighing analysis, stating that when considering the four factors, the Board of Adjustment should weigh "the potential harm to the neighboring properties by granting the variance against the potential harm to the property owner by denying it."[2]

The Board denied the Nepas' variance application, reasoning that (1) the

---

[1] *Board of Adjustment of New Castle County v. Kwik-Check Realty, Inc.,* 389 A.2d 1289, 1291 (Del. 1978). ("*Kwik-Check*").

[2] *McLaughlin v. Board of Adjustment of New Castle County*, 984 A.2d 1190, 1192-93 (Del. 2009); Accord *Board of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326, 330 (Del. 2012). ("*Verleysen*").

Nepas' Property was not unique, (2) the fact that the Nepas' Property was nonconforming could not alone justify the variances, and (3) the benefit to the Nepas in granting the variances did not substantially outweigh the detriment to the neighboring properties. I reverse the Board's decision, concluding that the Board (1) required a finding of "uniqueness" that is not required by *Kwik-Check,* (2) required a more stringent weighing test than does *Kwik-Check*, (3) permitted a lesser "detriment" to neighboring properties than does *Kwik-Check*, and (4) eliminated the nonconforming nature of a property as being a reason for granting a variance, which *Kwik-Check* does not do.

## BACKGROUND

The Nepas are the owners of the real property located at 116 Dewey Avenue, Lewes, Delaware (the "Property"). The Property is located within the R-4(H), Residential Medium-Density (Historic) Zoning District. When the Nepas purchased the Property, it was improved by a two and one-half story dwelling, a portion of which was only one and one-half stories (the "House"), with attached enclosed porches and a detached garage. The Property was legally non-conforming under the Lewes Zoning Code (the "Zoning Code") due to existing encroachments, which varied from 4.6 feet to 4.8 feet within the sideyard setback. The Nepas purchased the Property to renovate it and then re-sell it. The Nepas obtained Historic Preservation

3

Committee approval and a building permit to renovate the House. The approved renovations included rebuilding the House's roof, siding, windows, and the porch, as well as squaring the House so it would be level.

During the renovation, the Nepas discovered damage to the House as a result of puff beetles and fire. In February 2016, a rain storm caused water damage, resulting in the back roof collapsing, and causing the Nepas to use chains to hold the House in place. Subsequently, the Nepas resumed construction on the House. However, in addition to repairing the storm damage, the Nepas chose to enlarge the House, which increased the Property's dimensional non-conformities, and exceeded the parameters of the building permit, without seeking permission or approval from any authority.

The Nepas converted a 1.5 story portion of the House into two stories, and constructed a new addition on the back of the House, totaling approximately 521 square feet. These additions extended the approximately 4.8 foot sideyard encroachment rearward approximately 14.8 feet, and created a new encroachment of approximately 4.3 feet in the required minimum ten-foot separation from the House's detached garage. On March 22, 2016, Robin Davis, Assistant Building Official, conducted a site visit to review the status of construction and discovered that work outside the scope of the permit was being performed. He immediately issued a Stop-

Work Order.

Eleven months after the Stop-Work Order was issued, on February 17, 2017, the Nepas filed a request for three variances: (1) to verify and approve the construction of new additions that expand an existing nonconforming structure; (2) to verify and approve the construction of new additions that encroach approximately 4.8 feet into the required minimum eight-foot sideyard setback; and (3) to verify and approve the construction of a new addition that encroaches approximately 4.3 feet into the required minimum ten-foot separation from the nearest garage.

The Nepas' principal reason for justifying their variance request was that the 521 square foot addition was necessary so that they could install a first floor master bedroom to permit "aging in place." The Board denied the Nepas' variance application, reasoning that (1) the Nepas' Property was not unique, (2) the fact that the Nepas' Property was nonconforming could not alone justify the variances, and (3) the benefit to the Nepas in granting the variances did not substantially outweigh the detriment to their neighbors.

## STANDARD OF REVIEW

The standard of review on appeals from the Board of Adjustment is limited to the correction of errors of law and a determination of whether substantial evidence

exists in the record to support the Board's findings of fact and conclusions of law.[3]

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[4] If the Board's decision is supported by substantial evidence, a reviewing court must sustain the Board's decision even if such court would have decided the case differently if it had come before it in the first instance.[5] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable."[6] In the absence of substantial evidence, the Superior Court may not remand the Board's decision for further proceedings, but rather, may only "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[7]

## DISCUSSION

### I. Variance History

The General Assembly has granted municipalities and the three counties the

---

[3] *Janaman v. New Castle County Board of Adjustment*, 364 A.2d 1241, 1242 (Del.Super. 1976).

[4] *Miller v. Board of Adjustment of Dewey Beach*, 1994 WL 89022, *2 (Del. Super. Feb. 16, 1994).

[5] *Mellow v. Board of Adjustment of New Castle County,* 565 A.2d 947, 954 (Del. Super. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).

[6] *Mellow*, 565 A.2d at 956.

[7] 22 *Del. C.* § 328(c).

6

authority to regulate zoning as well as variances to zoning requirements.[8] As noted in *Board of Adjustment v. Verleysen* ("*Verleysen*"),[9] although the counties and municipalities all have these powers, the extent of those powers differ. Of significance here are a municipality's powers, which are limited to those granted by the legislature in Chapter 3 of Title 22, of the Delaware Code.[10]

There are two basic kinds of variances: use variances and area variances.

In the 1970s, the New Castle County Board of Adjustment was empowered to grant variances

> ... where owing to special conditions or exceptional situations, a literal interpretation of the provisions of any zoning ordinance, code or regulation will result in Unnecessary hardship or Exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose

---

[8] 22 *Del. C.* §§ 301, 321 and 327; 9 *Del. C.* § 2601 and § 1311-1313; 9 *Del. C.* § 4901 and §§4913-17; 9 *Del. C.* § 6902 and §§ 6913-6917.

[9] 36 A.3d 326, 329 (Del. 2012).

[10] 22 *Del. C.* § 321, which provides:

> The legislative body of cities or incorporated towns shall provide for the appointment of a board to be known as the board of adjustment and in the rules and regulations adopted pursuant to the authority of this chapter shall provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained.

of any zoning ordinance, code, regulation or map.[11]

The Supreme Court, in *Board of Adjustment of New Castle County v. Kwik-Check Realty, Inc.* ("*Kwik-Check*"),[12] ruled that the nature of the variance determined the standard to be applied in deciding whether to grant the requested variance. If the requested variance is a use variance, then the applicable standard is the more stringent one of unnecessary hardship. If the requested variance is an area variance, then the applicable standard is the less onerous one of exceptional practical difficulties. The standards differ because "a use variance changes the character of the zoned district by permitting an otherwise prohibited use, whereas an area variance concerns only the practical difficulty in using the particular property for a permitted use."[13]

The elements for the **unnecessary hardship** standard are as follows:

1)  the land cannot yield a reasonable return if used only for the permitted use;

2)  the need for the variance is due to unique circumstances and not general conditions in the neighborhood which reflect

---

[11]The decision in *Board of Adjustment of New Castle County v. Kwik-Check Realty, Inc.*, 389 A.2d 1289, 1290-91 (Del. 1978) sets forth the statute which, at that time, was located at 9 *Del. C.* § 1352(a)(3). The current statute is located at 9 *Del. C.* § 1313(a)(3), and it remains unchanged.

[12]389 A.2d 1289 (Del. 1978).

[13]*Id.* at 1291 (citations omitted).

8

unreasonableness of the zoning ordinance itself; and

3) the use sought will not alter the essential character of the locality.[14]

The elements of the **exceptional practical difficulties** standard are as follows:

1) the nature of the zone in which the property is located,

2) the character of the immediate vicinity,

3) the uses in that vicinity,

4) whether, if the restrictions were removed, would there be a serious affect on neighborhood property and uses, and

5) if the restriction(s) were not removed, would there be a hardship to the owner to make normal improvements allowed for the use permitted in the zoning regulations for that property.[15]

Before 1985, the authority given **municipalities** to grant variances provided that a Board of Adjustment may:

> Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in **unnecessary hardship**, and so that the spirit of the ordinance shall be observed and substantial justice done. (Emphasis

---

[14]*Baker v. Connell*, 488 A.2d 1303, 1307 (Del. 1985); *Rehoboth Art League, Inc. v. Board of Adjustment of the Town of Henlopen Acres*, 2009 WL 3069672, * 4 (Del. Super. Aug. 20, 2009), *aff'd*, 991 A.2d 1163 (Del. 2010); *Johnson v. McWilliams*, 1997 WL 817868, *2 (Del. Super. Nov. 19, 1997).

[15]*Kwik-Check*, 389 A.2d at 1291.

added.)[16]

Then, in 1985, 22 *Del. C.* § 327 was amended to provide that the Board of Adjustment of a municipality may:

> Authorize, in specific cases such variance from any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special conditions or exceptional situations, a literal interpretation of the provisions of any zoning ordinances, code, or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code, or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map.[17]

Thus, the General Assembly changed the statute granting power to municipal Boards of Adjustments to render it identical to the statute examined in *Kwik-Check*. Where statutes are similar, the case law interpreting one of the statutes applies to the other.[18] Consequently, a municipality's Board of Adjustment must apply the standard set forth in *Kwik-Check* when considering an area variance.[19]

---

[16]22 *Del. C.* 1953, §327(a)(3).

[17]22 *Del. C.* § 327(a)(3); 65 Del. Laws, Ch. 61, §1 (1985).

[18]*Cooch's Bridge Civic Ass'n v. Pencader Corp.*, 254 A.2d 608, 609 n. 4 (Del. 1969); *Williams v. Board of Adjustment of City of Newark*, 1993 WL 331060, *1 n. 1 (Del. Super. July 9, 1993); *Coastal Resorts Properties, Inc. v. Board of Adjustment of City of Rehoboth Beach*, 558 A.2d 1105, 1107 n. 2 (Del. Super. 1988).

[19]*Vondrasek v. Board of Adjustment of the City of Wilmington*, 2017 WL 1735402, *3 (Del. Super. May 1, 2017).

## II.  The Lewes Variance Ordinance

I now turn to the Lewes Zoning Code.  In 2011, the City of Lewes amended its Zoning Code. The provision regarding variances, §197-92, states:

A.    Definition: relief from the strict application of the provisions of this chapter when, owing to special conditions or exceptional situations, a literal interpretation of this chapter will result in exceptional practical difficulties to the property owner.

B.    Required findings. Pursuant to 22 *Del. C.* § 327(a)(3), the Board of Adjustment shall determine whether each variance application meets the following criteria:

(1) The variance relates to a specific parcel of land, and the hardship is not shared generally by other properties in the same zoning district and vicinity.

(2)  The variance can be granted without substantial detriment to the public good.

(3)  The benefits from granting the variance would substantially outweigh any detriment.

(4)  Approval of the variance would not substantially impair the intent and purposes of the Comprehensive Plan or this chapter.

C.    Additional considerations. The Board of Adjustment shall also consider the following factors in reaching its decision on each variance application:

(1)  Nature of the zone where the property lies.

(2)  Character of the immediate vicinity.

(3)  Whether the restrictions, if lifted, would affect neighboring

properties and uses.

(4) Whether the restriction would tend to create a hardship on the owner in relation to normal improvements.

D.     Additional Standards.

(1)    Use variances not authorized. These provisions governing variances shall not be construed to permit the Board of Adjustment, under the guise of a variance, to authorize a use of land not otherwise permitted in this chapter.

(2) Nonconforming situations not grounds for variance. Nonconforming lots, structures, uses or signs shall not be considered grounds for granting variances.

There are several matters to note. First, Subsection C largely codifies the *Kwik-Check* factors. Second, parts of Subsections B and D impose additional requirements on an applicant seeking an area variance in Lewes which render the test for granting an area variance more burdensome than 22 *Del. C.* § 327(a)(3) allows.

Section197-92 has four factors that are different than the *Kwik-Check* factors and analysis. Specifically, §197-92 (1) requires a finding of "uniqueness" that is not required by *Kwik-Check,* (2) requires a more stringent weighing test than does *Kwik-Check*, (3) permits a lesser "detriment" to neighboring properties than does *Kwik-Check*, and (4) eliminates the nonconforming nature of a property as being a reason for granting a variance, which *Kwik-Check* does not do.

### III. *Kwik-Check*

In *Kwik-Check,* the Delaware Supreme Court said that under the exceptional practical difficultly test "[a] practical difficulty is present where the requested dimensional change is minimal and the harm to the applicant if the variance is denied will be greater than the probable effect on neighboring properties if the variance is granted."[20] The Supreme Court went on to list four factors that must be considered when applying this test.

1. The nature of the zone in which the property lies;

2. The character of the immediate vicinity and the uses contained therein;

3. Whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; and

4. Whether, if the restriction is not removed, the restriction would create hardship for the owner in relation to his efforts to make normal improvements in the character of that use of the property which is permitted use under the use provisions of the ordinance.[21]

As I noted before, the Delaware Supreme Court has referred to the exceptional practical difficulty test as a weighing analysis, stating that when considering the four

---

[20] 389 A.2d at 1291.

[21] *Id.*

factors, the Board of Adjustment should weigh the potential harm to the neighboring properties by granting the variance against "the potential harm to the property owner by denying it."[22]

Put another way, if the Board grants a variance, then it must have considered the applicable factors and found that the benefit to the applicant was greater than the harm to the neighboring properties.

### Uniqueness

Section 197-92 (B)(1) states that the Board must determine whether "[t]he variance relates to a specific parcel of land, and the hardship is not shared generally by other properties in the same zoning district and vicinity." This "uniqueness" requirement seems to be drawn from the second prong of the "unnecessary hardship" test, which is applicable to "use variances" and states "the need for the variance is due to unique circumstances and not general conditions in the neighborhood which reflect the unreasonableness of the zoning itself." *Kwik-Check* does not have this "uniqueness" requirement for an area variance.

The Board noted in its written decision that the Nepas' Property "has a standard lot, on a standard street, with a standard situation for this community; namely the

---

[22] *McLaughlin v. Board of Adjustment of New Castle County*, 984 A.2d at 1192-93. Accord *Verleysen*, 36 A.3d at 330.

renovation of a nonconforming historic structure." Requiring a property to be unique in order to get a variance imposes a burden not found in *Kwik-Check* for no apparent reason and would alone seemingly defeat the Nepas' request for the three variances.

## The Weighing Analysis

Section197-92 (B)(3) states that the Board must determine that "[t]he benefits from granting the variance would *substantially outweigh* any detriment." This is a more stringent standard than what is required by *Kwik-Check.* In *Kwik-Check,* the Delaware Supreme Court said that under the exceptional practical difficulty test "[a] practical difficulty is present where the required dimensional change is minimal and the harm to the applicant if the variance is denied will be greater than the probable effect on neighboring properties if the variance is granted."[23] This seems to be a simple preponderance standard. Section197-92(B)(3) requires the benefit of granting the variance to the applicant to substantially outweigh any detriment to the applicant's neighbors, a much more stringent standard than required by *Kwik-Check.*

## Permitting a Lesser Detriment

Section 197-92 (C)(3) requires the Board to consider "[w]hether the restrictions, if lifted, would affect neighboring properties and uses." This is a lesser "detriment" than required by *Kwik-Check.* In *Kwik-Check*, the Delaware Supreme

---

[23] 389 A.2d at 1291.

Court stated that one of the factors was "whether, if the restriction upon the applicant's property were removed, such removal would *seriously affect* such neighboring property and uses.[24]" Section197-92 (C)(3) uses "affect" where *Kwik-Check* uses "seriously affect." Thus, §197-92 (C)(3) requires the removal of the zoning restriction to only "affect" neighboring properties while *Kwik-Check* requires the removal of the zoning restriction to "seriously affect" neighboring properties. Thus, the effect of this is to make it more difficult to get a variance than *Kwik-Check* requires.

### Nonconforming Lots

Section 197-92(D)(2) provides that nonconforming lots, structures, uses, or signs shall not be considered grounds for granting a variance. *Kwik-Check* does not exclude nonconforming structures from consideration. The Nepas' House, through no fault of their own, is a nonconforming structure because it was, in all likelihood, built long before Lewes ever had a zoning code which required sideyard setbacks. Having a nonconforming structure often gives an applicant a good reason for obtaining a variance. The Nepas' House is nonconforming because it was built in the sideyard setback, which setback did not exist when the Nepas' House was built. This is, in all likelihood, the problem that prevents the Nepas from expanding their House.

---

[24] *Id.* (emphasis added).

The Nepas' lot is a normal size. The Nepas' House is a normal size. The Nepas' proposed expansion to their House is modest. But for the fact that the Board is precluded from considering the nonconforming nature of the Nepas' House, the Nepas could probably make a good argument for a variance. The Board said that it "struggled to identify other bases of support for the variance" other than the fact that the Nepas' House is nonconforming. The Nepas' did struggle and they struggled largely because §197-92(D)(2) prohibits the Board from considering the one factor – nonconformity – that was their best argument for getting a variance. Obviously, this makes it difficult to expand their house and maintain the same look and appearance. *Kwik-Check* does not eliminate nonconformity as a ground, but §197-92 (D)(2) does.

All of these issues flow into the Board's decision. The Board found that (1) the Nepas' Property was not unique, (2) the benefit to the Nepas in granting the variances did not substantially outweigh the detriment to the neighboring properties, and (3) the fact that the Nepas' House is nonconforming alone is not sufficient to support a request for a variance. Arguably, the Board of Adjustment gave this last matter some consideration even though §197-92 prohibits it.

### IV. The Board's Decision

I have excerpted, underlined and footnoted those portions of the Board's

decision showing where the Board applied §197-92 in violation of *Kwik-Check*.

The Board concludes that the Applicants have not demonstrated an exceptional practical difficulty sufficient to warrant granting their request for variances to verify and approve the construction of additions as proposed during the March 21, 2017 and April 18, 2017 hearings on this matter and as identified in the Applicants' submission and exhibits.

The Board examined the nature of the zone in which the property lies – Residential Medium-Density (Historic) – including a review of similarly situated historic properties along Dewey Avenue and concludes that the Applicants' request is not unique and would represent a deviation from the spirt [sic] and intent of the Zoning Code.[25] Although the Property includes a nonconforming structure, per Section 197-92 (D)(2) of the Zoning Code, that fact alone is not sufficient to support a request for variances.[26] The Board struggled to identify other bases of support for the variances.

The Property has a standard lot, on a standard street, with a standard situation for this community; namely the renovation of a nonconforming historic structure.[27]

Regarding the exceptional practical difficulty standard, the Board does not find that the Property and circumstances necessitating the variances are unique.[28] Nor does the Board find that the variances can be granted without substantial detriment to the public good, and thus in weighing the impact, the Board cannot agree that the benefit in granting the variances substantially outweighs the detriment.[29] Indeed, the variances sought are significant, representing considerable

---

[25] Uniqueness.

[26] Nonconforming structure.

[27] Nonconforming structure.

[28] Uniqueness.

[29] Heightened weighing standard.

encroachments and expansions. Lastly, the Board finds that there is not sufficient evidence supporting a deviation from the requirements of the Zoning Code, which requirements have not been challenged by the Applicants.

There is little doubt that this Board's decision to deny the requested variances leaves the Applicants in a difficult position concerning returning the structure to its compliant status. This position, however, is entirely self-created. Had the Applicants applied for the subject variances before construction, the record would contain little evidence of a sufficient hardship compared to normal improvements, aside from a Code-based hurdle to pursuing a personal preference as to layout and features in the renovated dwelling. The Board does not find evidence within the record supporting a contention that the Applicants are presented with a hardship sufficient to prevent them from making normal improvements in the character of the use permitted under the Zoning Code and Comprehensive Plan.

Given the above, the Board concludes that the Applicants have failed to satisfy the elements required under the exceptional practical difficulty standard and the requirements set forth in the City of Lewes Code for a variance.

In summary, the Board (1) used a heightened exceptional practical difficulty test by requiring the benefit to the Nepas in granting the variances to substantially outweigh the detriment to the neighboring properties, (2) imposed a "uniqueness" requirement not required by *Kwik-Check*, and (3) excluded nonconformity as a reason for granting a variance, which *Kwik-Check* does not do.

The last excerpted portion of the Board's decision, where the Board states "that the Applicants have failed to satisfy the elements required under the exceptional

practical difficulty standard *and the requirements set forth in the City of Lewes Code for a variance*,"  make it clear that the Board imposed conditions on the Nepas' variance application that are not part of the *Kwik-Check* requirements.

The Board argues that § 197-92 does not impose a more stringent standard than *Kwik-Check* provides. Instead, the Board argues that additional requirements are allowed under the *Kwik-Check* standard. I have concluded that it is clear that the Board imposed a more burdensome standard than the *Kwik-Check* standard. It treats an area variance more like a use variance.

The more stringent standard is not allowed unless there is statutory authority granting such, as the municipality must conform with standards established by the General Assembly.[30]  The Board argues that such authority appears in 22 *Del. C.* § 307. This statute provides:

**Conflict with other laws.**

> Wherever the regulations **made under authority of this chapter** require a greater width or size of yards or courts, or a lower height of building or less number of stories, or a greater percentage of lot to be left unoccupied, or impose other higher standards than are required in any other statute or local ordinance or regulation, the regulations made

---

[30] *Verleysen*, 36 A.3d at 330-31. See *New Castle County Council v. BC Development Associates,* 567 A.2d 1271, 1275-76 (Del. 1989) (delegated power must be exercised in accordance with the delegation); *County Council of Sussex County v. Green*, 516 A.2d 480, 481 (Del. 1986) (with regard to rezoning issues, County Council must conform with standards established by the General Assembly) .

under authority of this chapter shall govern. Whenever any other statute, local ordinance or regulation requires a greater width or size of yards or courts, or a lower height of building or a less number of stories, or a greater percentage of lot to be left unoccupied, or imposed other higher standards than are required by the regulations made under authority of this state, such statute, local ordinance or regulation shall govern. (Emphasis added.)

This statute requires that the more stringent law pertaining to a certain parcel's use be applied. For example, a more lenient municipal law cannot preempt the State's Wetland's Act.[31] Two Superior Court decisions have interpreted this provision to mean that a municipality may develop its own standard for granting an area variance and if that standard is more stringent than *Kwik-Check*, then the municipalities' regulations govern: *Hellings v. City of Lewes Board of Adjustment*[32] and *Dale v. Town of Elsmere*.[33]

The problem with these decisions, however, is that they did not examine the limiting language of the statute qualifying that the regulations had to be made under authority of Chapter 3 of Title 22, of the Delaware Code. As examined above, a municipal zoning board is authorized only to impose a standard for granting an area

---

[31] *Route 26 Land Development Ass'n v. State, Natural Resources and Environmental Control*, 1989 WL 5168, *4 (Del. Super. Jan. 12, 1989).

[32] *Hellings v. City of Lewes Board of Adjustment*, 1998 WL 960710 (Del. Super. Dec. 31, 1998), *rev'd on other grounds*, 734 A.2d 641, 1999 WL 624114 (Del. 1999) (Table).

[33] *Dale v. Town of Elsmere*, 1988 WL 40018 (Del. Super. Apr. 20, 1988).

variance which contains the *Kwik-Check* factors. While case law supports the conclusion that the General Assembly "has expressed its intention that regulation and planning of the land use in incorporated municipalities be left as far as is possible to local government,"[34] the municipality's participation in zoning matters must conform with standards established by the General Assembly.[35] Thus, the Code provision at issue here, which imposes a more stringent standard, is *ultra vires* and cannot be applied.

Finally, only the offending portions of § 197-92 need be stricken pursuant to the severability provision of the Code.[36] Since Subsection C largely codifies the *Kwik-Check* factors, that portion of the Code may stand to the extent it complies with *Kwik-Check*.

---

[34]*Scarborough v. Mayor and Council of the Town of Cheswold*, 303 A.2d 701, 707 (Del. Ch. 1973). *Accord Richardson v. Board of Adjustment of New Castle County*, 1989 WL 112527 (Del. Super. Sept. 25, 1989), *aff'd*, 577 A.2d 751 (Del. 1990).

[35]*See County Council of Sussex County v. Green*, 516 A.2d at 481.

[36]In § 197-17, it is provided:

Severability.

A. The Mayor and City Council hereby declares that the sections, paragraphs, sentences, clauses and phrases of this chapter can be separated from one another.

B. Should a court decide that any section or provision of this chapter is unconstitutional or invalid, such decision shall not affect the validity of this chapter as a whole or any part other that [sic] the part judged unconstitutional or invalid.

## CONCLUSION

The City of Lewes Board of Adjustment's decision denying the application for three area variances by Ernest M. and Debra A. Nepa is REVERSED.

IT IS SO ORDERED.

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
oc:    Prothonotary