# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FRANCES C. and DEAN A. RAPP,     )
                                  )
      Petitioners,            )
                                  )      C.A. No. N21A-11-006 FWW
                                  )
      v.                        )
                                  )
                                  )
NEW CASTLE COUNTY BOARD       )
OF ADJUSTMENT,              )
                                  )
      Respondent.           )

Submitted: February 17, 2022
Decided: May 26, 2022

## MEMORANDUM OPINION

*Upon Frances C. and Dean A. Rapp's Writ of Certiorari from the Decision of the New Castle County Board of Adjustment:*

## AFFIRMED.

Frances C. and Dean A. Rapp, Newark, Delaware, *pro se*.

Aysha L. Gregory, Esquire, NEW CASTLE COUNTY OFFICE OF LAW, 87 Reads Way, New Castle, DE, 19720; Attorney for Respondent New Castle County Board of Adjustment.

**WHARTON, J.**

# I. INTRODUCTION

This *certiorari* review stems from a denial by the New Castle County Board of Adjustment ("Board") of Petitioners Frances C. and Dean A. Rapp's ("Rapps) application for a dimensional variance to construct a screened-in porch on their home. The Rapps sought the variance at a hearing before the Board on July 22, 2021. The Board denied their application and the Rapps bring the matter to this Court on *certiorari* review. They contend that: (1) the Board violated their constitutional right to due process; (2) the Board unconstitutionally took their property; (3) the Board made several errors of law and fact; and (4) the Board's decision is not supported by substantial evidence in the record. Upon consideration of the parties' submissions and the record, for the reasons set forth below, the Board's decision is **AFFIRMED**.

# II. FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2021, Frances and Dean Rapp petitioned the Board to construct a screened-in porch at the rear of their home.[1] The Rapps' home is located on 0.12 acres of land at 45 Devalinder Drive in a subdivision of the Villages of Long Creek.[2] The Villages of Long Creek is an age restricted community for

---

[1] Pets.' Op. Br., at 2, D.I. 13.
[2] Resp.'s Ans. Br., at 2, D.I. 16.

individual's 55 or older.[3]  The Rapps are an elderly couple and have limited mobility due to medical issues.[4]

The Villages of Long Creek has designated open spaces along the perimeter and in the center of the subdivision.[5]  The Rapps' property has a 25-foot setback, and their application requested a variance to this setback of 13.4 feet from the rear property line to construct a screened-in in porch.[6]  The Rapps submitted this application to their Home Owners Association's six member Architectural Review Committee ("ARC") and eight member Board of Directors for approval prior to submitting it to the Board of Adjustment.[7]  On April 27, 2021, a total of 13 of 14 members of the ARC and Board of Directors tentatively approved the application contingent upon the Rapps obtaining a zoning variance from the Board.[8]  The Rapps applied for a variance and on June 25, 2021, they received notice of the public hearing from the Board.[9]

The hearing was held virtually by Zoom on July 22, 2021.[10]  The Rapps were instructed to submit any presentation materials at least one week prior to the

---

[3] Resp.'s Ans. Br., at 2, D.I. 16.
[4] Pets.' Op. Br., at 2, D.I. 13.
[5] Resp's Ans. Br., at 2, D.I. 16; Pets.' Op. Br., at Ex. 4, D.I. 13.
[6] *Id.* at 3.
[7] Pets.' Op. Br., at 2, D.I. 13.
[8] *Id.*
[9] *Id.*
[10] *Id.,* at 3.

hearing.[11]  The Board informed the Rapps that testimony also may be presented at the hearing for consideration by the Board.[12]  The Rapps submitted their presentation documents accordingly.[13]

At the start of the hearing, the Board announced time restrictions for each side's presentations.[14]  The Rapps claim they were unable to join the hearing via Zoom and were only able to be present by telephone.[15]  The Board was not informed during the hearing that the Rapps were unable to participate due to technical problems.[16]  At the hearing, the Rapps revised their application to increase the setback to 15 feet from the rear property line rather than the 13.4 feet they originally proposed.[17]  Testimony and arguments were presented on behalf of the Rapps by their son, Stephen Rapp, who advised the Board that the requested variance is identical to a variance that was granted at 83 Devalinder Drive allowing a 15 foot variance for an enclosed porch.[18]  Once the Rapps had finished making their presentation, the Board invited comments from the public.[19]

---

[11] Pets.' Op. Br., at 3, D.I. 13.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.,* at 4.
[16] Resp.'s Ans. Br., at 4, D.I. 16.
[17] *Id.*
[18] *Id*.
[19] *Id.,* at 6.

Three members of the public testified in opposition to the application.[20] First, Stephen Brubaker testified that 83 Devalinder Drive is a significantly different property than the Rapps' property because it has a smaller rear yard.[21] Brubaker explained that lateral views are highly valued in the community and would be negatively impacted if the application were approved.[22] Next, Eric Dean testified that due to the height of the proposed screen porch, the structure would impose on the views of the community.[23] The third witness, Michael Ostroski testified that the screened-in porch would impede his views of the open space behind his home and be aesthetically unpleasing.[24] At the close of public comment, the Department of Land Use recommended the Board approve the requested variance.[25]

The Rapps were given the opportunity to provide rebuttal testimony.[26] They argued the screened-in porch better protected them from the environment than an awning or umbrella.[27] At the conclusion of the rebuttal testimony, the record was closed so the Board could engage in discussion.[28]

---

[20] *Id.*
[21] *Id.*
[22] *Id.,* at 6-7.
[23] *Id.,* at 7.
[24] *Id.*
[25] *Id.,* at 9.
[26] *Id.*
[27] Resp.'s Ans. Br., at 9, D.I. 16.
[28] *Id.*

The Board denied the application.[29] The Board determined the Rapps did not demonstrate an exceptional practical difficulty inherent in the land that justified granting relief from the zoning code and that the proposed screened-in porch would have a blighting influence on the community.[30] The Board found that the Rapps' property is distinguishable from 83 Devalinder Drive because that property is on a curved part of Devalinder Drive and has significantly more room between the homes.[31] Additionally, the original buyer of the Rapps' home chose a builder option that placed the home on the building restriction line necessitating a variance if the Rapps wanted to construct the porch.[32] Further, the Board noted that there is an expectation of uniform construction in communities such as the Villages of Long Creek which would be disrupted by the Rapps' proposed porch.[33] Finally, the Board found that the balance of harms test favored denial so as to allow the community's continued use and enjoyment of the shared resource – the dedicated open space – which is of significant value to the community.[34]

## III. THE PARTIES CONTENTIONS

---

[29] Pets.' Op. Br. at 5, D.I. 13.
[30] Board of Adjustment Notice of Decision, at 4, (Date of Decision: July 22, 2021, Date filed: Nov. 4, 2021).
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

The Rapps claim that the Board violated their constitutional right to due process in a variety of ways, the denial of the variance constituted an unconstitutional taking of their property, the Board made several errors of law and fact when reaching its conclusion, and the Board's decision was not supported by substantial record evidence.[35]  The Board contends that the Rapps received due process, no unconstitutional taking took place, and the Boards decision was supported by substantial evidence and free from legal and factual errors.[36]

## IV.   STANDARD OF REVIEW

This Court reviews the Board's decision for errors of law and determines whether substantial evidence exists to support the Board's conclusions.[37]  The Court "will not weigh the evidence, determine questions of credibility, or make [its] own factual findings."[38]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39]  Further, the evidence is "more than a scintilla but less than a preponderance."[40]

## V.   DISCUSSION

**A.   The Due Process Claims.**

---

[35] Pets.' Op. Br., D.I. 13
[36] Resp.'s Ans. Br., D.I. 16.
[37] *Bd. of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 329 (Del. 2012).
[38] *Id.*
[39] *Snyder v. New Castle Cty.*, 135 A.3d 763, 2 (Del. 2016) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).
[40] *Id.*

The Rapp's first claim that they did not receive due process. They present multiple claims alleging unconstitutional due process violations in the manner in which the hearing was held. None establishes a violation of due process. First, they claim that the Board failed to return a decision within the required twenty days of the hearing. The Board announced its decision on July 22, 2021 but did not file a written decision until November 4, 2021. While the Board's Rules of Procedure do specify this time limit, that direction is not mandatory.[41] The Rapps have not demonstrated any prejudice, harm, or adverse effect they suffered as a result of the delay in the written decision.

Next, the Rapps argue the Board failed to give them proper notice of the Board's time limits and deprived them of a meaningful and effective opportunity to present and defend their application.[42] The records shows otherwise. First, the Rapps did not object to the time limits put in place at the beginning of the hearing, nor did they request a modification.[43] Further, when the Rapps' representative – there son Stephen - was asked if any additional comments were needed, he said, "I'm pretty good if, -- unless there's any questions."[44] The Court deems any

---

[41] *See Pitts v. White,* 111 A.2d 217, 218-19 (Del. 1955) (Consider time requirement as directory rather than mandatory unless it will have an adverse effect upon one of the parties.).
[42] Pets.' Op. Br., at 10, D.I. 13.
[43] *Id,* Ex. 7, at 6.
[44] *Id.,* at 26.

objection to the time limits on their presentation waived. The virtual nature of the meeting was authorized by statute.[45] Neither the Rapps nor their son objected to the hearing being held this way and none of them ever advised the Board that the elder Rapps were having technical issues.[46] Finally, at the close of public comment period, the Rapps were offered an opportunity to rebut any testimony presented in opposition to their application.[47]

The remaining due process claims allege that the Rapps were denied a fair and meaningful proceeding by an impartial and disinterested tribunal. They argue that because the Board Chairman stated, "[w]e are the Community" during the proceeding, the Board was asserting a vested interest in the outcome of the hearing.[48] The Rapps read too much into this comment. None of the Board members had any personal, financial, or other interest in the outcome of the application.[49] The record demonstrates that the Board acted in a neutral manner when deliberating and deciding the application.[50] The Rapps' complaints concerning the Board's conduct are not supported by any evidence in the record, nor does the record support their assertion that the Chairman exerted undue influence over other Board members. The

---

[45] 29 *Del. C.* § 10006A.
[46] Pets.' Op. Br., at 4, D.I. 13.
[47] *Id.,* at 9.
[48] *Id.,* at 12.
[49] *Harvey v. Zoning Bd. Of Adjustment of Odessa*, 2000 WL 33111028, at *4 (Del. Super. Ct. Nov. 27, 2000), *aff'd*, 781 A.2d 697 (Del. 2001).
[50] Pets.' Op. Br., Ex. 7, D.I. 13.

Board properly weighed evidence presented to it and reached a conclusion based on that evidence under the appropriate legal standard. The Board did not violate the Rapps' due process rights.

## B. The Unconstitutional Taking Claim.

The next claim the Rapps make is that the Board's denial of the variance application was an unconstitutional taking of their property.[51] Specifically, they claim the Board effected a regulatory taking. A regulatory taking occurs when a regulation imposed by the government places such a burden on the landowner's use of his or her property that the government has in affect "taken" the landowner's property.[52] The prohibition on the Rapps proposed building intrusion into the 25-foot setback area in no way amounts to the government taking the Rapps' property. The Board's denial of the variance application did not amount to an unconstitutional regulatory taking of the Rapp's property.

The Rapps also contend in their unconstitutional taking claim that the Board denied every resident of the Villages of Long Creek their "deeded property right: (i) to be represented by their duly elected Board of Directors and ARC members; and (ii) to determine the character of their community."[53] They base this argument on the tentative approval they received from the Board of Directors and ARC for their

---

[51] *Id.,* at 17.
[52] *Pennsylvania Coal Co. v Mahon*, 260 US 393 (1922).
[53] Pets.' Op. Br., at 23, D.I. 13.

project. The Rapps are wrong. The Board is not bound by the recommendations of the Board of Directors or ARC, which were contingent on approval by the Board anyway. To hold otherwise would result in the improper delegation of the responsibilities of the Board to the boards of directors and architectural review committees of individual communities.

## C. The Legal and Factual Error Claim.

New Castle County's Board of Adjustment receives its jurisdiction over variance claims from 9 *Del. C.* § 1313, which describes the standard by which the Board reviews an application for a dimensional variance.[54] That statute empowers the Board to consider variances from regulations that will not be contrary to the public interest where, because of special conditions or exceptional situations, a literal interpretation of the regulation would result in "unnecessary hardship or exceptional practical difficulties" to the property owner.[55] In *Board of Adjustment of New Castle County v. Kwik-Check Realty, Inc.*, the Delaware Supreme Court held that area variances may be granted upon a showing of "exceptional practical difficulty."[56] When analyzing the "exceptional practical difficulty" test, the Board considers four factors:

---

[54] 9 *Del C.* § 1313(a)(3).
[55] *Id.*
[56] *Bd. of Adjustment of New Castle Cty. v. Kwik-Check Realty, Inc.,* 389 A.2d 1289 (Del. 1978).

> The Board should take into consideration the nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements in the character of that use of the property which is permitted use under the use provisions of the ordinance.[57]

Additionally, *McLaughlin v. Bd. of Adjustment of New Castle County*, directs the Board to "weigh the potential harm to the neighboring properties by granting the variance against the potential harm to the property owner by denying it."[58]

Any person aggrieved by a decision of the Board may present a petition to this Court within 30 days after the filing of the decision alleging that the Board's decision was illegal in whole or in part.[59] The Court may allow a writ of *certiorari* to be directed to the Board.[60] Upon return of the writ, the Court may reverse or affirm, wholly or in part, or modify the decision brought up for review.[61]

The Court finds the Board applied the proper legal standard. In its Notice of Decision, the Board expressly identified the statutory standard as well as the four-pronged *Kwik-Check* analysis and *McLaughlin's* balance of harms test as the legal

---

[57] *Id.*
[58] 984 A.2d 1190, 1192-93 (Del. 2009).
[59] 9 *Del. C.* §1314(a).
[60] 9 Del. C. 1314(b).
[61] 9 *Del. C.* § 1314(f).

standards it was applying.[62] In their brief, the Rapps extract comments various Board members made during the Board's deliberations to argue that the Board misapplied the applicable legal standards. Both *Kwik-Check* and *McLaughlin* direct the Board to consider certain factors in determining whether a literal interpretation of the regulation would result in "unnecessary hardship or exceptional practical difficulties." It is important to understand, however, that neither case mandates how much weight the Board must afford to any one of those factors or how they should be balanced. It is apparent to the Court that a fair assessment of the Board's deliberations reflects that the Board did consider the requisite factors in reaching its decision.[63] It is also apparent to the Court that the Board applied the appropriate legal standard. As the Chairman explained prior to the Board voting:

> MR. CHAIRMAN: Yeah. It's a mandatory standard [exceptional practical difficulty] under the quick check [sic] standard. And where it is absent, as we all seem to agree is the case here, that leads us to a hardship analysis. And it is not a sufficient hardship that you just don't get what you want.
>
>       \*            \*            \*
>
> MR. CHAIRMAN: Right. And when you discuss balance of harms, what you're talking about is the effect on the Applicant versus the effect on the community, right?[64]

---

[62] Board of Adjustment Notice of Decision at, 1.
[63] Tr. Board of Adjustment Public Hearing – 7-22-21, at 54-78.
[64] *Id.* at 77.

In the end, after considering the *Kwik-Check* and *McLaughlin* factors, the Board determined to deny the application.[65] The Court concludes that the Board's decision was free of legal error.

The Rapps allege that the Board's Chairman make a factual error in describing them as the original owners. In the Court's view, the Rapps have misinterpreted the Chairman's comment. Nevertheless, that claimed error does not appear to have factored into the Board's deliberations, does not appear in the Board's written decision, and is *de minimus* at most. Whether the Rapps originally selected the particular model home with the set-back requirement or later purchased that model with the same set-back is analytically irrelevant.

## D. The Lack of Substantial Evidence Claim.

Lastly, the Rapps claim that the Board's decision was not supported by substantial evidence. The Court disagrees. The burden of persuasion is on the Rapps to convince the Court that Board's decision should be overturned.[66] The Court gives deference to the "experience and specialized competence of the Board."[67] Substantial evidence exists in the record to support the Board's decision if that evidence is such that the Board could fairly and reasonably reach the conclusion it

---

[65] *Id.*

[66] *Mellow v. Board of Adjustment*, 565 A.2d 947, 954 (Del. Super. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).

[67] *Holowka v. New Castle County Bd. of Adjustment*, 2003 WL 21001026 at *4 (Del. Super. Apr. 15, 2003).

14

did.[68] The Court reviews the entire record to determine if there was sufficient evidence upon which the Board could have based its decision, not whether it sufficiently addressed the legal standards.[69]

In reaching its decision, the Board first determined that open land behind the property is intended to be used as open space.[70] This zoning scheme would be negatively affected if the variance were permitted and would likely create a precedent for other homeowners to apply for and receive variances from building set back restrictions on their properties. Second, Board considered the character of the immediate vicinity. The public testimony showed the Board properly distinguished the Rapps' property from the property they alleged to be analogous at 83 Devalinder Drive.[71] The testimony described 83 Devalinder Drive as a property on a curve, with the roadway at an angle to the adjacent houses, and the screened-in porch having much less impact on the views from the neighboring properties.[72] The Rapps' proposed setback intrudes more on the views of the community. Finally, when weighing the potential harm to other property owners compared to the potential harm to the Rapps if the variance were denied, the Board determined the potential harm

---

[68] *Mellow v. Board of Adjustment*, 565 A.2d 947, 954 (Del. Super. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).
[69] *Dexter v. New Castle County Bd. Of Adjustment*, 1996 WL 658861 at *3 (Del. Super. Sept. 17, 1996).
[70] Resp.'s Ans. Br., at 2, D.I. 16; Pets.' Op. Br., Ex. 4, D.I. 13.
[71] Resp.'s Ans. Br., at 4, D.I. 16; Pets.' Op. Br., Ex. 4, D.I. 13.
[72] *Id.*

to other individuals' use of their properties and hinderance to their views outweighed any potential harm to the Rapps.[73]

## VI.  CONCLUSION

The Court finds that there is substantial evidence to support the Board's decision, and that decision is free from legal error.  Therefore, the decision of the Board is **AFFRIMED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, Judge

---

[73] Pets.' Op. Br. at 5, D.I. 13.