# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. LINGO, II, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. S22A-02-002 RHR |
| | ) | |
| TOWN OF GEORGETOWN BOARD | ) | |
| OF ADJUSTMENT and the | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: January 30, 2023
Decided: April 11, 2023

Upon Appeal from a Decision of the Town of Georgetown Board of Adjustment,
AFFIRMED.

## MEMORANDUM OPINION AND ORDER

Paul G. Enterline, Esquire, Georgetown, Delaware, *Attorney for Appellant Robert W. Lingo, II*.

John W. Paradee, Esquire (argued), Mackenzie M. Peet, Esquire, Baird Mandalas Brockstedt Federico & Cardea LLC, Dover, Delaware, *Attorneys for Appellee Town of Georgetown Board of Adjustment*.

Vincent G. Robertson, Esquire (argued), Mark F. Dunkle, Esquire, Kyle F. Dunkle, Esquire, Parkowski, Guerke & Swayze, P.A., Rehoboth Beach, Delaware, *Attorneys for Appellee State of Delaware*.

ROBINSON, J.

Appellant asks this court to reverse the Town of Georgetown Board of Adjustment's approval of three variances and a special exception to allow the State of Delaware to construct the new Sussex County Family Court courthouse and attached parking garage.[1] Appellant argues the Board of Adjustment failed to correctly apply the zoning code and that it failed to correctly evaluate and apply statutory requirements to grant the variances.[2] For the reasons that follow, the Board's decision is **AFFIRMED.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Robert W. Lingo, II ("Lingo"), owns and resides at real property located in the Town of Georgetown on East Pine Street. The State of Delaware ("State") purchased several parcels of land next to Lingo's property where it intends to construct the courthouse and attached parking garage (the "Proposed Courthouse").[3] In order to construct the Proposed Courthouse, however, the State needed three variances and one special exception from the Town of Georgetown Board of Adjustment (the "Board"): i) a variance from the Town of Georgetown Zoning Code's (the "Code") height requirements set out in § 230-154 and "§ 230

---

[1] Amend. and Suppl. Notice of Appeal and Pet. For Cert. (hereinafter "Notice of Appeal") (D.I. 3).

[2] *Id. See also* Appellant's Br. in Supp. of Appeal at 5 (hereinafter "Appellant's Opening Br.") (D.I. 17).

[3] The parcel can be further identified as Sussex County Tax Map Parcel No. 135.17-148.00. Notice of Appeal ¶ 4-5.

Attachment 1: Height, Area, and Bulk Requirements" to not exceed seventy-five feet, ii) a special exception from § 230-151 to reduce the parking garage's interior drive aisle width from twenty-five feet to twenty-three feet and eight inches, iii) a variance from § 230-151 to reduce the size of the parking spaces from ten feet by twenty feet, to eight feet and six inches by eighteen feet, and iv) a variance from § 230-148 to reduce the number of required parking spaces from 559 to 407. The Proposed Courthouse is located in Georgetown's Historic District zone.

The Board held a hearing on the State's application on January 5, 2022. The State presented testimony from its architect who testified that: i) the Code requires onsite parking; ii) the existing Family Court courthouse does not provide off-street parking; iii) conforming with the Code would create unnecessary bulk; iv) the requested variances are the minimum variances needed without sacrificing safety and functionality; v) granting the requests would not alter the essential characteristics of the Historic District; and vi) the denial of the variances would create a great hardship on the State for the reasonable use of the State's property. The State also presented testimony from the Chief Judge of the Family Court, who testified that the existing Family Court courthouse was far too small, was unsafe because of its design, and lacked parking. Finally, the State submitted a letter from a local attorney who practices in Family Court who reiterated these points. During the public comment period, three local attorneys testified in support of the State's

application.

Notably, no one testified in opposition to the State's application and Lingo did not attend the hearing. The Board voted unanimously in favor of the State's application and issued a written decision on March 2, 2022.

## II. STANDARD OF REVIEW

This court hears appeals from boards of adjustment pursuant to Title 22 Section 328 of the Delaware Code.[4] The standard of review on appeal is strictly to determine "whether substantial evidence exists in the record" to support the findings of the Board.[5] The evidence must be such that a reasonable and objective mind might accept the evidence as adequate to support a conclusion.[6] This court does not stand in the shoes of the trier of fact and cannot determine questions of credibility.[7] Likewise, this court may not replace the judgment of the Board by making its own conclusions.[8] Questions of law are reviewed *de novo*.[9] Absent any errors of law, this court reviews Board decisions only for abuse of discretion.[10] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that

---

[4] 22 *Del. C.* § 328.

[5] *Markert v. Bd. of Adjustment City of Rehoboth Beach*, 2022 WL 4478388, at *3 (Del. Super. Sept. 26, 2022) (citations omitted).

[6] *Id.* (*citing Mellow v. Bd. of Adjustment of New Castle Cnty.*, 565 A.2d 947, 954 (Del. Super. 1988) (citations omitted)).

[7] *Id.* at *4.

[8] *Id.*

[9] *Protect Our Indian River v. Sussex Cnty. Bd. of Adjustment*, 2019 WL 2166807, at *2 (Del. Super. May 17, 2019).

[10] *Mellow*, 565 A.2d at 952.

the decision was arbitrary and unreasonable."[11] During the appeal process, "the court will consider the record in the light most favorable to the prevailing party below."[12]

## III. DISCUSSION

Lingo argues the Board's decision must be reversed because it did not correctly apply the Code to the application and because it failed to correctly apply statutory requirements when granting the variance. Although Lingo is appealing all three variances and the special exception, his main concern—understandably so—is with the height variance that will permit the construction of the large parking garage that will abut and loom over his home. The bulk of this decision will focus on that variance.

**A.      The Board appropriately considered the Code when granting the variance request.**

Lingo claims the Board failed to apply the Code's height limitations, limit on the number of stories, and setback requirements when it granted the State's application for a variance to increase the height of the Proposed Courthouse not to exceed seventy-five feet from grade.[13] Lingo cites to § 230-154(C) of the Code that allows for height increases up to fifty-five feet from grade for governmental

---

[11] *Id* at 955-56 (citations omitted).
[12] *Holowka v. New Castle Cnty. Bd. of Adjustment*, 2003 WL 21001026, at *4 (Del. Super. April 15, 2003).
[13] Appellant's Opening Br. at 7-9.

buildings, hospitals, schools, or similar structures.[14] Because, he argues, the proposed parking garage is not one of those listed structures, the Board's decision violates the Code.[15]

Lingo also argues that the Proposed Courthouse does not have adequate setbacks as required by § 230-154(C) of the Code: "government buildings . . . may be built to a maximum of 55 feet . . . provided that the front, side, and rear setback requirements shall each be increased by one additional foot for each five feet that the structure exceeds the height limit established for the applicable zoning district."[16] Because the height limit in the Historic District is thirty-five feet from grade, and the proposed parking garage is designed to be seventy-five feet from grade, Lingo concludes this section of the Code requires an eight-foot setback.

The State and the Board respond that: i) Georgetown's Building Official determined that the Proposed Courthouse—along with its attached parking garage— is a governmental building and Lingo has not challenged that determination; ii) there are no setback requirements in the Historic District, so none are required for the Proposed Courthouse under § 230-154(C); and iii) the purpose of a variance is get relief from compliance with the Code.[17]

---

[14] *Id.* at 7.
[15] *Id.* at 7, 9.
[16] Georgetown C. § 230-154(C).
[17] *See* Board's Opening Br. at 27-28; State's Opening Br. at 9-10.

Lingo's argument that the Board "erred as a matter of law in failing to apply the zoning code"[18] is misplaced. The State sought a variance from the very Code sections that Lingo relies upon in his argument. The Board's role is not to enforce the Code, but rather to grant variances from it. In the Board's written decision, the nature of the State's request is denoted expressly as "a variance from § 230-154 and § 230 Attachment 1: Height, Area, and Bulk Requirements for an increase of the proposed building height not to exceed 75' feet from grade."[19] In that decision, the Board notes that the variance is to increase the height from the "Code compliant 55' to a height not to exceed 75' from grade."[20] One member of the Board who voted in favor of granting the variance noted that there were other tall buildings near the Proposed Courthouse and another member stated that she understood the need for the increased height.[21] Thus, the Board clearly was aware of and considered the Code requirements regarding setbacks when it granted a variance from the section of the Code that included those setback requirements. Again, the Board's function is to grant variances from the Code, not—as Lingo argues—to apply the Code.

**B.      The Board applied the appropriate statutory factors for granting the variances and the decision is supported by substantial evidence.**

---

[18] Appellant's Opening Br. at 9.
[19] State's App. at B0001.
[20] *Id*. at B0004.
[21] *Id*. at 0007.

Lingo argues the State failed to establish a hardship from some factor peculiar to the property that is not self-inflicted.[22] An amendment to the Code, rather than the State's variance, is the appropriate remedy, according to Lingo.[23] Lingo claims "[t]he record is devoid of any evidence that there is anything unique or 'exceptional' about the lot itself that require[s] any of the three variances."[24] Lingo argues the Board was incorrect when it accepted as true the following representation made by the State: "the facility will be designed to be stepped back from the street to reduce bulkiness and height of the building's exterior walls closest to the street *and neighboring properties*."[25] Finally, Lingo submits there is nothing in the record to suggest that the State cannot develop its property in strict conformance with the Code, and that the Board failed to adequately address the *Kwik-Check*[26] factors.[27]

The State and the Board argue that the need for the variance is directly related to the burden imposed on the State by the literal interpretation of the Code.[28] Thus, the exceptional practical difficulties arise from the restraints of the Code rather than

---

[22] Appellant's Opening Br. at 11, 12.
[23] *Id.* at 11.
[24] *Id.* at 13.
[25] *Id.* at 15 (emphasis included) (citation omitted).
[26] *Kwik-Check Realty Co. v. Bd. of Adjustment of New Castle Cnty.*, 389 A.2d 1289 (Del. 1978) (establishing a series of factors a board of adjustment must consider when reviewing an area variance).
[27] Appellant's Opening Br. at 14-15.
[28] *See* State's Opening Br. at 12; Board's Opening Br. at 24.

any self-imposed hardship.[29] They argue that the *Kwik-Check* factors were properly considered, and substantial and undisputed evidence supports the Board's decision.[30]

There are two types of variances from zoning code requirements that are recognized by Delaware courts: i) an area variance, which is applicable where an owner seeks relief from a dimensional requirement or limitation because the proposed improvement is constrained by the current zoning code, and ii) a use variance, which is applicable where an owner seeks relief from a restriction on their use of their property for a particular purpose because the proposed use is precluded from the current zoning code.[31] In the present case, the State sought an area variance.[32]

The *Kwik-Check* factors are well-known to practitioners of planning and zoning law: i) the nature of the zone in which the property lies; ii) the character of the immediate vicinity and current uses therein; iii) would the variance, if granted, cause a serious adverse effect on neighboring properties and their uses; and iv) would the variance, if not granted, create an unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements to the property which is a permitted use under the provisions of the zoning code.[33]

---

[29] State's Opening Br. at 12.
[30] *Id.* at 14; *see also* Board's Opening Br. at 21.
[31] *Markert*, 2022 WL 4478388, at *4.
[32] Lingo, at times, argues that the Board should have used the "unnecessary hardship test," but this test is for use variances, not area variances.
[33] *Kwik-Check*, 389 A.2d at 1291.

These factors are to be considered conjunctively rather than disjunctively, and the Board's conclusion must be supported through particularized facts.[34]

Lingo faces an uphill battle in challenging the Board's consideration of the *Kwik-Check* factors because only supporters of the State's application testified and there was no contrary evidence presented to the Board. Lingo argues to this court— but did not argue to the Board—that a large parking garage is out of character in a small, historic town. He points out that it would be the first parking garage in Georgetown and that the height and bulk of the garage would overwhelm the area. Whether or not Lingo's observations are correct, they were not presented for the Board's consideration, and this review is limited to the record before the Board.

As to the *Kwik-Check* factors, the Board heard testimony that a courthouse with required onsite parking is a permitted use in the Historic District. The Board also noted that there were other governmental buildings and courthouses in the immediate vicinity so that the use of the Proposed Courthouse was consistent with the character of the area. There was no evidence presented that there would be any negative effects on neighboring properties; indeed, the Board heard testimony that the Proposed Courthouse would be beneficial by providing needed off-street parking. As to the fourth *Kwik-Check* factor, a Board member specifically noted the

---

[34] *See Markert*, 2022 WL 4478388, at *5; *see also Kwik-Check*, 369 A.2d at 699 (Del. Super. 1977) (citations omitted).

exceptional practical difficulty that the State would face if it tried to develop the property without the height variance. The State could not comply with both the Code's parking requirements and its height requirements. Reconciling those two contradictory Code provisions is exactly the function of a board of adjustment when it considers a variance.

**C.     As it did with the height variance, the Board properly granted the other variances and special exception.**

Although the focus of Lingo's arguments in his briefing and at oral argument was on the height variance for the parking garage, he appealed the Board's granting of all three variances and the special exception. Lingo claims in passing that smaller parking spaces and a narrower interior drive aisle would increase the number of cars in the parking garage which would have an adverse impact on him in the form of additional fumes and noise. As with the height variance, the two other variances and special exception were properly considered and granted by the Board. As part of its presentation, the State provided a parking study that compared the Code's parking space and drive aisle dimensions to requirements in other towns. There was no testimony that the two variances and the special exception would have any adverse impact on neighboring properties. In voting in favor of granting the variances and special exception, the Board members noted that Georgetown's Code required larger parking spaces and drive aisles than other towns and specifically found that there

would be no adverse effect on nearby properties. Finally, as to the variance to reduce the number of parking spaces, the Board found that based on the detailed parking study, 407 spaces was sufficient for the Proposed Courthouse and there would be more parking spaces than what currently exists.

## IV.    CONCLUSION

For the reasons discussed above, the decision of the Town of Georgetown Board of Adjustment is **AFFIRMED.**

**IT IS SO ORDERED.**

*/s/ Robert H. Robinson, Jr*
Robert H. Robinson, Jr. Judge